# REPORTS.

## GRAFTON,

### JULY TERM, A. D. 1851.

---

### LISBON v. BATH.

If a party does not insist upon an exception to a deposition, of which he is ful-
ly aware, at the first trial, it will be deemed to be waived, and he cannot take
advantage of it afterward.

A verdict will not be set aside as against evidence, when the evidence is circum-
stantial and conflicting, so that different conclusions may be fairly drawn by
different persons.

ASSUMPSIT, for supplies furnished by the plaintiffs to Bailey
Clough and his wife, alleged to have their settlement in Bath.

The pauper was taxed from 1825 to 1832 inclusive; gener-
ally for one or two cows and some other stock, and in 1831 for
one cow, two young cattle, and one sheep. Sherburn Lang was
collector for 1830, and the pauper paid his tax for that year in
full.

To establish the settlement of the pauper in Bath, it was ne-
cessary to shew that his taxes for the year 1831 had been paid
by him. There was assessed against him that year, a minister
tax of fifty-one cents, which it was agreed was illegal. It was
also admitted that he paid his highway tax; and that all his oth-
er taxes for that year, amounting to $3.03, were paid by him,
except three cents, and the question respecting the taxes of that

year was whether this balance of three cents was paid by the pauper.

It appeared that Mr. Sutherland, the clergyman for whose benefit the minister tax was assessed, gave directions in that and in previous years, to the selectmen and collector, not to enforce the collection of that tax against any who were unwilling to pay, and that these instructions were followed in that and in other years.

It also appeared that the defendants in 1846, paid $62.00, and in 1847, $65.00, for the relief of Bailey Clough, and made no claim over.

To prove that the pauper paid this balance of three cents, the plaintiffs introduced the deposition of Bailey Clough, who testified, in substance, that he resided in Bath, but could not tell the year he came there. He paid taxes in Bath; Sherburn Lang was collector of taxes in Bath one of the years he lived there, but he could not tell which year; had the impression he paid his taxes in that year. Lang had a minister tax which he declined paying; witness did not recollect the amount of the taxes, or what he paid; nor where; nor whether Lang was collector more than one year. The witness thought he paid the whole to Lang; no part to any other person. Did not recollect that his taxes were abated by the selectmen; recollected there was a difficulty about his voting one year, because his taxes were abated, but could not tell the year; recollected the tax paid to Lang more definitely than the taxes of other years, because it has been talked of; witness was in his eightieth year; his health bad and his memory very poor; had an attack on the last Sunday night before he testified, that made it difficult for him to get about the house. It benumbed his flesh and affected his speech and lungs.

The second interrogatory and answer was as follows:

Did you pay your taxes during the time you resided in Bath, or any portion of the time you lived there; and if so what portion, and what years did you pay your taxes; and was Sherburn Lang collector of taxes any year or years while you resided there; and if so, did you pay him your taxes for the year or years that he was collector?

Lisbon *v.* Bath.

*Ans.* — That I am certain, I could not answer. I know I have paid taxes in the town of Bath. When the collector came, if I had the money I paid the tax, and if I had not, I waited till I got it. I do remember that Sherburn Lang was collector of taxes in Bath one year while I lived there. I do not remember his being collector any more than one year, nor what year he was collector. I supposed I have the impression, after the time that has elapsed, that I paid the tax that year as regularly as any one in town.

At the time of caption the defendants objected to the second interrogatory in this deposition as leading, and renewed the objection on the trial. This deposition, including the answer to the second interrogatory, was read on the former trial of this cause. The defendants excepted to this question on the former trial, but this exception was not furnished to the court after the verdict, as among those relied upon by the defendants, to set aside the verdict, and was not sent to the superior court in the case transferred on that trial. The defendants also excepted to this answer, because the witness did not testify from recollection. The answer was admitted subject to these exceptions.

Darius Clough, son of the pauper, a witness for the plaintiffs, testified as follows : " I lived with my father in the fall and winter of 1831. Mr. Sherburn Lang, the collector, came there for a tax against my father, and said he had not his tax bill with him ; he said he had business in the neighborhood and thought he would turn aside and get his tax ; that he saw the tax list a few days before, and it would not be much difference from three dollars ; not many cents difference ; two or three cents difference. He talked over the minister tax ; my father mentioned the minister tax, and said it would be hard for him to pay it, as he had not the means or privilege of attending the meeting. Mr. Lang said Mr. Sutherland had given him the agency to discharge the minister tax to such persons as were unable to pay. I then took my father aside and gave him three dollars to pay the tax ; and my father gave the money to Mr. Lang, and Mr. Lang said he would discharge or cross out the tax, or something to that effect ; and said it would not be much difference either

way from three dollars. He did not say whether he could tell which way it would be. He did not say anything about paying back if the tax were less, or calling for the difference if it were more."

Sherburn Lang, the collector, a witness for the defendants, testified that at the time when the three dollars were paid on Clough's taxes, he made no agreement to pay the balance or see it paid; that he received and credited the three dollars generally on Clough's taxes, without any agreement as to the balance; that he paid the three dollars only, and no more; that at the time of the payment of the three dollars, there was a conversation about the minister tax; that Clough asked how much the minister tax was, and said he would try to get an order for that part. He further testified that he had fully settled with the town for the taxes of that year; that the town charged him with the whole amount, and deducted the abatements; that he could not tell whether there was any abatement on Clough's tax; that he had no particular recollection on that point. The defendants introduced the following abatement order:

"FEB. 24, 1844.

*To the Treasurer of Bath :*

Allow Sherburn Lang, collector of 1831, twelve dollars and eighty cents, being the amount of all the abatements on his tax bill, by agreement and settlement of this date.

(Signed,)

H. H. LANG, } *Selectmen*
SAMUEL MINOT, JR., } *of*
DANIEL HOLT, } *Bath.*

There was no evidence to shew how this sum of $12.80 was made up. The selectmen who signed this order are still living at Bath.

Mr. Patterson, town clerk of Bath, a witness for the defendants, testified that he was a selectman of Bath in 1831, and in several subsequent years; that he and Mr. Hutchins had made thorough search, and could not find any order or other writing that shewed an abatement on the tax of Clough for the year 1831; that in his practice as selectman, the particular taxes

abated were specified in the abatement order, but that general abatement orders had sometimes been given like that made on the settlement with Lang, February 24, 1844. No order to abate taxes for the year 1831 was produced, except that stated above.

There was no evidence that the collector afterwards called on Clough for this balance of three cents, or for the minister tax.

The jury found a verdict for the plaintiffs, which the defendants moved to set aside, for the ruling of the court admitting the answer to the second interrogatory in Bailey Clough's deposition, and because the verdict finding an agreement on the part of Lang to pay the tax of 1831, and payment of the same by him was against evidence.

*C. R. Morrison* and *Hibbard* for the defendants.

1. The second question in the deposition of Bailey Clough is leading. It suggests not only the subject, in relation to which the witness was desired to answer, but also what answer he was desired to give. 1 Greenl. Ev., 481; *Williams* v. *Eldridge,* 1 Hill's (N. Y.,) Rep., 249.

2. The answer is merely what the witness *inferred,* and not what he *recollected.* 1 Greenl. Ev., 483.

3. The testimony of Darius Clough, upon which the plaintiff relied to prove an agreement of Lang to pay the balance of the tax, has no such tendency. A promise " to. discharge or cross out the tax," is not a promise to pay the three cents, which remained unpaid. The witness having stated what promise Lang did make, the jury should not be allowed to presume, that he made another. The facts have not been changed from what appeared at the former trial.

4. The plaintiffs did not show, that the Clough tax was not included in the abatements, and so there was no ground for a presumption that the collector was obliged to pay the amount of the balance in his settlement with the selectmen.

5. The collectors being charged with the amount by the selectmen, would not be a payment of the tax. If thus charged, and if the charge was allowed by him, there is no evidence that

in this settlement he acted as the agent of Clough. If, under the circumstances testified to by him, he paid to the town the amount of all the taxes, which had not been abated, it was done to exonerate himself from his liability to the town, and was not a payment of the taxes for and in behalf of those against whom the taxes had been assessed. Notwithstanding what he did with the selectmen, he might have collected the whole of every tax, which had not been paid to him. It is not enough for the plaintiffs to prove that Lang promised to pay the balance, and that he was afterwards obliged to allow the amount of it in his settlement with the selectmen. There was no consideration for the promise, and he was under no obligation to perform it. The plaintiffs must shew, not only that Lang allowed to the town the amount of the tax, but that in doing so, he intended to act, and did act, for and in behalf of Clough ; and the evidence, so far as it proves anything, disproves this essential fact. *Wallkill* v. *Mannaking*, 14 Johns. Rep., 88.

6. If there is any evidence tending to sustain the plaintiffs' case, still the verdict should be set aside, because it is decidedly against the weight of evidence. *Wendell* v. *Safford*, 12 N. H. Rep., 178.

*H. A. Bellows* and *Rand* for the plaintiffs.

1. The question is not leading. The witness was old and infirm and his mind not very clear, and it was necessary to direct his attention to the point about which his testimony was needed. It was done by calling his mind to his residence in Bath, the payment of taxes there, and the fact that Lang was collector, all acknowledged facts, about which there was no controversy : and he was then enquired of, if he paid his taxes while Lang was collector. This we do not understand to be leading, since it does not suggest the answer, as it must do to be leading. 1 Stark. Ev., 123 ; and upon material points. 1 Phil. Ev., 268. The whole controversy is, whether he paid his taxes when Lang was collector ; and he might as well be enquired of in that form, as to be asked whether he paid his taxes in 1831. It is manifest that he could not state the years that he paid tax-

es, but could give a distinct account of what occurred when Lang was collector. The question then, we say, went no further than was proper, considering the condition of the witness, and the necessity of leading his mind to the subject of enquiry. 2 Stark. Ev., 125–6. *Auro* v. *Petroni*, 1 Stark. Rep., 100. In *Sadler* v. *Murrah*, 3 How., 195, (5 U. S. Dig., 984,) it was held that a witness might be asked, if he was a notary public at a certain time and place ; if he protested a bill and gave notice, &c. ; and if so, in what manner, &c.

Again, how far leading questions shall be allowed, is to a great extent within the discretion of the judge who tries the cause ; for he only can understand the occasion for them. *People* v. *Mathes*, 4 Wend., 247, *Marcy, J. ; Donnell* v. *Jones*, 13 Ala. Rep., 490. In this case the discretion was properly exercised, for it is clear that the witness was not led.

2. The answer is, in substance, that he had an impression that he paid his tax that year. It is to be read, " I supposed, and I had the impression," &c. It is for the jury to say whether he intends to state an *inference* or *memory*, and it may well be understood to be a statement of his impression of the fact. " On any subject to which a witness may testify, if he has any recollection at all of the fact, he may express it, as it lies in his memory, of which the jury will judge." 1 Greenl. Ev., § 440.

To both these objections, the defendants are now precluded from taking exception, because no such exception to the manner of examining a witness, or to the witness' manner of stating his evidence, even if it amount to secondary evidence, ought to be allowed, after a deposition has been read on a former trial, and no exceptions taken or insisted upon. *Burnham* v. *Wood*, 8 N. H. Rep., 337 ; *Coffin* v. *Jones*, 13 Pick. Rep., 441 ; *Moody* v. *Rowell*, 17 Pick. Rep., 490.

4 and 5. From the lapse of time and the admissions of Bath that the pauper had his settlement there, by supporting him, the jury are authorized to find that he had such settlement. *Hopkinton* v. *Springfield*, 12 N. H. Rep., 328, and on this ground alone, they might find that all his taxes for seven years had been paid. So they might find that the whole tax for 1831

including the three cents, had been paid ; as they did find that
the tax of 1830 had been paid.   So, if no direct evidence of
the payment of the tax of 1831 had been offered, the jury might
nevertheless have found it paid.     The direct evidence, which
was offered is not to be regarded as *necessarily* all that was said
and done by the parties, as if we were about to construe a written
instrument.   It may well be looked upon as establishing certain
points of an arrangement by the parties, leaving the rest to be
supplied by the inferences naturally to be drawn from the na-
ture of the case, aided by lapse of time, and the admissions of
the defendants.   The substance of the proof is this, Lang knew
the tax was about three dollars, he could not tell whether two
or three cents more, or less.   He agreed to take three dollars,
and discharge or cross out the tax.   The fair construction is, he
was to keep the excess or pay the deficiency.   He was to make
an effectual discharge, and that could only be by payment.   It
was his duty then to pay the tax ; he has paid it, if it was not
abated, and there is no evidence it was abated.   It is proved
that there is no evidence of such abatement to be found.   The
admission made by the town was shortly after the making the
order for the abatement.   It is not necessary there should be a
binding contract by Lang to pay the tax ; it is enough if he did
pay it at the pauper's request.

6.   In *Wendell* v. *Safford*, 12 N. H. Rep., 178, the court
say that it is their duty to set aside a verdict when " it is de-
cidedly against the weight of evidence," but it is also said, " the
general rule under such circumstances is, the verdict once found
shall stand.   The setting it aside is the exception, and ought to
be an exception of rare and almost singular occurrence," and
the whole case of *Wendell* v. *Safford* is, we think, decidedly
against the weight of the defendants' exception.   For though a
clearer case than this for the interference of the court, the ver-
dict was not set aside.   2 Tid. Prac. 908.

BELL, J.   A question to one of the plaintiffs' witnesses was
objected to as leading, at the caption, and again at the trial in
the court of common pleas.   The verdict being against the de-

Lisbon *v.* Bath.

fendant, he furnished a note of the exceptions, on which he based his motion for a new trial, and did not include this exception, nor in any way insist upon it. If a party is silent at the taking of a deposition, when an objectionable question is put, or an inadmissible answer is given; or if he is silent, when such a deposition is offered as proof to a jury, it is well settled that the exception can never be taken afterward. It is waived; and once waived, it is gone forever.

In this case the exception being taken at the trial, the defendant might have insisted upon it, and it would then probably have been transferred with the other questions to the superior court and decided. But he did not insist upon it, nor ask that the question relative to it might be transferred. We think this a waiver of the exception, for a waiver is but a neglect or designed omission to insist upon a matter, of which a party may take advantage, at the time when it ought to be done, so that it must operate as a trap to the other party to revive and insist upon it afterwards. If a defect of any kind in the evidence is seasonably urged and insisted upon, the party has, in most cases, an opportunity to retake or supply his evidence, and thus remedy the difficulty. The silence of his opponent defeats and prevents any effort to do this, and it is unreasonable that a man should take advantage of a defect which he may be deemed thus indirectly to have occasioned.

The objection to the witness' answer, that he did not testify from recollection, does not seem to us to be well founded in fact. A very exact analysis of the force of the expression, "*I have the impression,*" shows that it does not necessarily imply recollection, but such *impression* may be matter of inference. But we understand this expression to be used familiarly and colloquially as equivalent to this, "I have an indistinct recollection." We think it is ordinarily used in this sense, by persons not well educated or attentive to their modes of speech, and is ordinarily so understood by every body. If a party supposes this phrase is used with a different sense by the witness, it is for him to show how the fact is, by proper inquiries; otherwise the court may well suppose the jury understand it, as with our knowledge

of the common use of the words, we suppose the witness to have meant. This objection was waived, at the taking of the deposition by the neglect to object to it. If the objection had then been made, the plaintiff might have then removed all doubt by further questions. In his answer to one of the questions proposed by the defendants, the witness gives his probable meaning in the former answer, "I *recollect* the tax paid to Lang *more definitely* than the taxes of other years," &c. It would seem that the ground taken at the trial by the plaintiff, as it is now in the argument, was that the whole tax was in fact paid by the pauper in this way, the collector was uncertain whether the tax was a little over or a little under three dollars, and he said if the pauper would pay three dollars he would discharge or cross out the tax; and that was in substance and effect, that if the tax was over three dollars he would pay the balance for him; and that when the collector paid over the residue of the tax, he paid this little balance, as he had agreed to do. The evidence bearing upon this point, taken in connection with the proof, that the defendants had not long after, and while the transaction was recent, relieved the pauper for two years, as a person who had his settlement in Bath, was clearly sufficient to justify the jury in finding the fact to be so, if that seemed to them to be the fair result of the evidence, the balance of the probabilities in the case.

It is not that clear and apparent case of an erroneous or wrongful verdict which calls upon the court to set it aside as against evidence; but, on the contrary, if the question upon the precise evidence given in this case had arisen between the collector and the pauper, upon an attempt by the former to enforce the collection of the balance, there would probably have been but one result in any body's mind : namely, that the tax was paid. The court will not set aside a verdict as against the evidence, merely because they might, upon an examination of the evidence, have arrived at a result different from that found by the jury ; nor will they set it aside on this ground, where the credibility of witnesses is to be considered, presumptions are to be made, and inferences to be drawn ; and where the nature of the evidence

is such, that different persons might reasonably have different impressions concerning it. *Wendell* v. *Safford*, 12 N. H. Rep., 171.

*Judgment on the Verdict.*