*C. A. Benjamin*, for the plaintiff.
*H. P. Moulton*, for the defendant.

---

### NOEL BIGAOUETTE *vs.* HENRY PAULET.

Suffolk. Nov. 13, 1878; Sept. 15, 1881. — Jan. 3, 1883. C. ALLEN, COLBURN & HOLMES, JJ., absent.

A husband may maintain an action for the loss of the *consortium* with his wife, against a person who has criminal conversation with her, whether such conversation is with or without her consent, and although the act caused no actual loss of her service to him.

TORT in four counts. The first count was for seduction of the plaintiff's wife; the second and fourth were for assaults upon her; and the third was for a rape: whereby the plaintiff lost her comfort, assistance, society and benefit. Writ dated April 9, 1877. Trial in the Superior Court, before *Rockwell*, J., who allowed a bill of exceptions, in substance as follows:

The only witnesses were the plaintiff and his wife. The wife testified that the plaintiff was a workman in the factory of the Smith American Organ Company, in a subordinate capacity, under the defendant, and that the parties were in the habit of visiting each other occasionally with their wives; that on some occasions, previously to July 5, 1876, the defendant told the plaintiff's wife that he would turn her husband away from the factory if she refused to receive the defendant's visits; that on July 5, 1876, the defendant violently and forcibly ravished her; that he also immediately showed her a pistol, and threatened to shoot her if she should ever tell her husband; that she was at that time four months pregnant with child; that her child was

born on December 11, 1876; that on December 16, 1876, she first told her husband of what had occurred between her and the defendant, and three days afterwards the plaintiff was discharged from the factory by the defendant; that shortly after July 5, 1876, the plaintiff saw black and blue marks on his wife's arms and legs, and observed that she was ill; that she had no physician, and they kept no servant to assist her; and that she attended to and performed her ordinary domestic duties in her husband's family from the time of the assault up to the time of her confinement, but that her performance of these duties was attended with pain and difficulty to herself. The plaintiff also testified to some of the above facts, and then rested his case.

The defendant contended, the foregoing being all the material testimony in the case, that there was not sufficient evidence of a loss of the wife's services to enable the plaintiff to maintain this action.

The judge ruled that, as there was no evidence to support the count charging the defendant with seducing the plaintiff's wife, and as the evidence applicable to the counts for assault and rape proved that no loss of service was caused to the plaintiff, the action could not be maintained; and directed a verdict for the defendant. The plaintiff alleged exceptions.

The case was argued at the bar, in November 1878, by *A. Russ & H. B. Sargent, Jr.*, for the plaintiff, and by *W. P. Harding*, for the defendant; and was afterwards submitted on briefs by the same counsel.

W. ALLEN, J. The plaintiff cannot maintain this action for an injury to the wife only; he must prove that some right of his own in the person or conduct of his wife has been violated. A husband is not the master of his wife, and can maintain no action for the loss of her services as his servant. His interest is expressed by the word *consortium*, — the right to the conjugal fellowship of the wife, to her company, coöperation and aid in every conjugal relation. Some acts of a stranger to a wife are of themselves invasions of the husband's right, and necessarily injurious to him; others may or may not injure him, according to their consequences, and, in such cases, the injurious consequences must be proved, and it must be shown that the husband

actually lost the company and assistance of the wife. This is illustrated in the statement of injuries to a husband in 3 Bl. Com. 139, 140, where such injuries are said to be principally three: "abduction, or taking away a man's wife; adultery, or criminal conversation with her; and beating or otherwise abusing her." The first two are of themselves wrongs to the husband, and his remedy is by action of trespass *vi et armis.* In regard to the others, the author's words are, "If it be a common assault, battery, or imprisonment, the law gives the usual remedy to recover damages, by action of trespass *vi et armis,* which must be brought in the names of the husband and wife jointly: but if the beating or other maltreatment be very enormous, so that thereby the husband is deprived for any time of the company and assistance of the wife, the law then gives him a separate remedy by an action of trespass, in nature of an action upon the case, for this ill usage, *per quod consortium amisit;* in which he shall recover a satisfaction in damages." He states, as one of the circumstances affecting the damages in an action for adultery, "the seduction or otherwise of the wife, founded on her previous behavior and character."

It is usual in actions for criminal conversation to allege the seduction of the wife, and the consequent alienation of her affections, and loss of her company and assistance, and sometimes of her services; but these are matter of aggravation, except so far as they are the statement of a legal inference from the fact itself, and actual proof of them is not necessary to the husband's right of action. The loss of the *consortium* is presumed, although the wife may have herself been the seducer, or may not have been living with the husband. A husband who is living apart from his wife, if he has not renounced his marital rights, can maintain the action, and it is not necessary for him to prove alienation of the wife's affection, or actual loss of her society and assistance. See *Chambers* v. *Caulfield*, 6 East, 244; *Wilton* v. *Webster*, 7 C. & P. 198; *Yundt* v. *Hartrunft*, 41 Ill. 9. The essential injury to the husband consists in the defilement of the marriage bed, — in the invasion of his exclusive right to marital intercourse with his wife, and to beget his own children. This presumes the loss of the *consortium* with his wife, of comfort in her society in that respect in which his right

is peculiar and exclusive. Although actions of this nature have generally been brought where the alienation of the wife's affections, and actual deprivation of her society and assistance, have been the prominent injury to the husband, yet it is plain that the seduction of the wife, inducing her to violate her conjugal duties, and the injuries arising from that, are not the foundation of the action. The original and approved form of action is trespass *vi et armis*, and, though this form was adopted when the act was with the consent of the wife, it was for the reason, as given by Chief Justice Holt, that "the law indulges the husband with an action of assault and battery for the injury done to him, though it be with consent of his wife, because the law will not allow her a consent in such case to the prejudice of her husband, because of the interest he has in her." *Rigaut* v. *Gallisard*, 7 Mod. 78; 2 Ld. Raym. 809; Holt, 50. See also Bac. Ab. Trespass, C, 1; and Marriage, F, 2; 2 Chit. Pl. (13th Am. ed.) 855. Reeves Dom. Rel. 63. The fact that trespass, and not case, was the form of action, even when the wrong was accomplished by the seduction of the wife, for the reason that the wife was deemed incapable of consent, and "force and violence were supposed in law to accompany this atrocious injury," indicates that the cause of action arose from acts committed upon the person of the wife, and not from influences exerted upon her mind, — that the corrupting of the body rather than the mind of the wife was the original and essential wrong to the husband.

We think that this action may be maintained upon the evidence offered, not for the actual loss of comfort, assistance, society and benefit, alleged in the second and fourth counts as consequences of the assaults set forth in them, but for the loss of the *consortium* with the wife which is implied from criminal conversation with her, whether with or against her will.

*Exceptions sustained.*