## CROSS v. GRANT.

| | |
|---|---|
| 62 | 675 |
| 70 | 234 |
| 70 | 373 |
| 70 | 376 |
| 70 | 387 |
| 70 | 503 |
| 70 | 517 |
| 70 | 518 |

When the verdict is general and the declaration consists of more than one count, the jury may be asked upon which count the verdict is founded. The assent of the whole panel to the answer of the foreman is presumed if no juror dissents.

The statute regulating the property rights of married women (G. L., *c.* 183, *ss.* 1, 12) has not abolished the common-law action for criminal conversation.

Neither the husband's ill treatment of his wife nor his infidelity is a defence for the infidelity of the wife, in an action for criminal conversation. Evidence of his misconduct as respects his wife is admissible in mitigation of damages.

In such an action a letter written by the defendant is admissible, if, unexplained, it tends to show that he resorted to indirect means to procure the presence of the plaintiff's wife in the town where he resided.

Whether evidence is too remote is a question of fact to be determined at the trial.

When counsel, in, argument to the jury, state and comment upon facts not in evidence against the objection of the other party, the error is not corrected unless, upon due retraction, it is found that the right to a fair trial has been maintained.

CASE, for criminal conversation with the plaintiff's wife. A second count charged the defendant with enticing, persuading, and inducing her to abandon him. Verdict for the plaintiff.

The defendant is a physician living in Lancaster. The plaintiff's wife, residing at Stewartstown, was an invalid and under the defendant's treatment for a disease of the womb at Lancaster at different times, varying from several months to a few days at a time, from July, 1878, to the time of the trial. The defendant visited her several times also at Stewartstown. The defendant claimed that upon all these occasions the health of Mrs. Cross was such that medical treatment was requisite, and that her visits at Lancaster, and his upon her at Stewartstown, were necessary for that purpose, while the plaintiff claimed the contrary. She did not cohabit with the plaintiff after August, 1879.

1. The jury were instructed that if they found for the plaintiff upon the first count, they need not consider the second. Upon the return of the verdict, the court inquired of the foreman upon which count the verdict was founded, to which he replied that they found for the plaintiff upon the first count, and did not consider the second. This inquiry was made in open court, in the presence and hearing of the other jurors, who expressed no dissent from the answer of the foreman. The defendant excepted both to the inquiry and the answer.

2. The defendant requested the following instructions:

(1) The plaintiff cannot recover, if before the date of the writ he had so treated his wife as seriously to injure her health, and such treatment had not been condoned by her.

(2) The plaintiff cannot recover, if before the date of the writ he had treated his wife with extreme cruelty, and such treatment had not been condoned, nor if his wife, at the time when it is claimed the defendant alienated her affections from her husband, enticed her to leave him, and had criminal conversation with her,

had a lawful justification for leaving her husband by reason of his conduct and treatment of her.

(3) There is no evidence tending to show any cause of action upon which the plaintiff is entitled to recover upon either count in his declaration by the laws of this state.

Instructions numbered (1) and (2) were given in substance as requested in relation to the second count, and refused upon the first count; all the others were refused, and the defendant excepted.

The defendant also moved for a nonsuit for reasons stated in the third request. Motion denied, and he excepted.

3. Upon the matter of damages, the jury were instructed as follows:

[ " In damages the plaintiff is entitled to, and you will give him, full compensation for the injury he has received, and no more. He is entitled to compensation for the loss of the comfort and solace of his wife's society, and also for any mental pain and distress which he may have suffered in consequence of the defendant's misconduct. In estimating the damages, you may take into consideration the character, conduct, and state of health of Mrs. Cross, the relations which existed between her and her husband and all the circumstances of their domestic life, as you may find them to have been, and also any and all other facts in the case tending to show the value of her society and of the comfort which the plaintiff derived from it.]

" The defendant has introduced evidence tending to prove that the plaintiff treated his wife with extreme cruelty, and so as seriously to injure her health; but this the plaintiff denies, and adduces evidence tending to show that he did not. If you find upon all the evidence that he did so treat her, it is matter competent and proper to be considered by you only upon the question of damages. Either extreme cruelty, or such treatment as seriously to injure her health, would furnish to Mrs. Cross sufficient ground for a divorce from the plaintiff, and would justify her, without a divorce, in leaving him, and wholly withdrawing from all intercourse or society with him. By such conduct he would forfeit and lose all legal right, as against his wife, to the solace and comfort of her society. If, then, you find that the plaintiff did treat his wife either with extreme cruelty or so as seriously to injure her health, you will consider that fact in mitigation or in reduction of the damages,—that is to say, you will diminish the damages which you would otherwise award to the plaintiff by so much as in your judgment they ought to be diminished by reason of such treatment; in other words, in assessing damages to the plaintiff for the loss of the solace and comfort of his wife's society, you are to take into consideration the fact that he, by his own misconduct, has forfeited and lost, as against his wife, all right to her society. So, also, if you find that the plaintiff treated her harshly, improperly, and unkindly, though in a less degree than is requisite to constitute

extreme cruelty, and though not so as seriously to injure her health, you may consider such treatment, or any other facts in the case tending to show that the plaintiff held his wife's society in light estimation, in mitigation and reduction of the damages. [In short, taking into consideration all the facts and circumstances of the case as you find them to be, you will award to the plaintiff such a sum in damages as in the exercise of a just and candid judgment you think will fully compensate him for the loss he has sustained."]

Upon the second count the court gave those parts of the foregoing instructions which are included in brackets. To these instructions the defendant excepted.

4. Subject to the defendant's exception, Joseph Knapp, called by the plaintiff, was allowed to testify that the defendant wrote to his (the witness's) wife as follows : " He wrote that he wanted my wife to come down, and Sarah [plaintiff's wife] would come with her, and that my wife's doctoring should cost me nothing." The letter had been destroyed.

5. Several letters, written by the defendant to Mrs. Cross while she was under his treatment, were put in evidence by the plaintiff, who claimed that they tended to show improper intimacy between them. To rebut this inference, the defendant offered in evidence letters of a similar character written by him about the same time to a Mrs. Paul, who was also his patient. The letters were excluded, and the defendant excepted.

6. The defendant's counsel argued to the jury that Mrs. Flanders and Mrs. Keyser, two witnesses called by the plaintiff in rebuttal, were parties to a conspiracy against the defendant, and were unworthy of credit. The plaintiff's counsel argued that they were unwilling witnesses, and stated in substance that there were some facts to which Mrs. Flanders did not testify, because they were not known to the plaintiff until after he had closed his case, and that, not being rebutting, they could not under the ruling of the court be put in evidence; and to this the defendant excepted. Upon the defendant's objection, the plaintiff's counsel immediately desisted.

7. The deposition of Mrs. Knapp, who was sick, was taken by the plaintiff during the trial, and put in evidence. Subsequently, near the close of the trial, her attendance was procured by the defendant, and upon his application he was allowed to call her to the stand and cross-examine her at length. Upon being pressed by the defendant to give the whole contents of a letter which she stated she had received from the defendant, and which has been destroyed, she said,—" Dr. Grant told me that I should have means to come with [to Lancaster], and enclosed $3 in the letter," and that her husband opened the letter, took the money, and kept it. Neither Mrs. Knapp in her deposition, nor Mr. Knapp, who was called by the plaintiff as a witness before his case in chief was closed, had testified to this fact. The defendant's counsel claimed

and argued to the jury that this statement of Mrs. Knapp was false; that if true, Mr. Knapp knew it, and would have been re-called by the plaintiff to testify to it; that the "lie was too big for him," and hence he was not recalled. The plaintiff's counsel, in his argument to the jury, commented upon the manner in which and the time when the evidence respecting the $3 came into the case, and stated that the only reason why they did not recall Mr. Knapp to corroborate Mrs. Knapp upon this point was because they were precluded from so doing under the rule, and that Mr. Knapp was ready to testify to the fact if he could have been re-called. Here the defendant's counsel interrupted, and excepted to what the plaintiff's counsel had said and was saying, and stated that Mr. Knapp would not so testify, and repeated the statement several times. To this the plaintiff's counsel replied that Knapp would so testify, repeated this reply several times, and offered to stop his argument and put Mr. Knapp on the stand. To these statements of the plaintiff's counsel the defendant excepted.

8. Mrs. Wyman, called by the plaintiff, testified to the conduct of the defendant and the plaintiff's wife upon a certain occasion, and as follows: "I said then, 'I can't stand this any longer. I can't have such works in my house. The doctor must stop coming here so much.' I stepped into the sitting-room, and the doctor was not there; and she [Mrs. Cross] stepped into the bedroom." This evidence, upon the objection of the defendant, was excluded, and the jury told that they must not consider it. The plaintiff's counsel, in his argument to the jury, began to repeat and comment upon this evidence, and, upon objection being made by the defendant, insisted that it was in the case, but when informed by the court that it was ruled out, immediately desisted. To this repetition of testimony by the plaintiff's counsel the defendant excepted.

*Bingham, Mitchells & Batchellor*, for the defendant. 1. No cause of action is alleged in the first count on which the verdict was rendered. The action of *crim. con.* was a common-law action, and grew out of the relation between husband and wife. It has been abrogated in this state. It was one of the rights which re-sulted to the husband from the wife's serfdom, dependence, and non-existence in legal contemplation. The action existed at a time when the law recognized the husband as the baron, lord, mas-ter, owner, superior, and by such other titles as indicated superior-ity. But the law has undergone a change. The marriage contract does not now extinguish the wife's legal existence. She retains her legal identity and individuality. The husband is not her lord and master. She is his partner. She enjoys as many rights and privileges as he does, so far as the marriage relation extends. Her property, rights, and privileges are not taken from her upon her marriage. Laws 1846, *c.* 327; 1857, *c.* 1960; 1858, *c.* 2073; 1860, *c.* 2343; 1865, *c.* 4080; 1869, *c.* 35; 1871, *c.* 27; G. L., *c.* 183;

*Harris* v. *Webster*, 58 N. H. 483; *Clough* v. *Russell*, 55 N. H. 279; *State* v. *Hayes*, 59 N. H. 450.

The gist of the action is the loss of the services of the wife. The different expressions of "comfort," "solace," "society," "affection," are but different elements of ·service, and the forms in which it is expressed. The husband having no right to demand, control, or have the benefit of the wife's services, he has no ground for his action. Her services, in the different forms of expression, have always been the basis of the action. The action rests upon the same basis that the action in favor of the father for the seduction of his minor daughter does. He must have a right to her services in order to maintain the action. Services lie at the foundation. *Weedon* v. *Timbrell*, 5 T. R. 357; *Lynch* v. *Knight*, 9 H. L. Cas. 577. Consent or connivance of the husband is an absolute bar to the action. *Sanborn* v. *Neilson*, 4 N. H. 511; 2 Gr. Ev., s. 51; Bull. N. P. 27. The bad character of the wife may be shown in mitigation of damages. 2 Gr. Ev., s. 56.

2. Our second point is material only in the event that we are not sustained in our first. The defendant claimed that if the plaintiff had by his own act forfeited all right to his wife's society, that was a bar to the action. The jury were instructed that such abandonment and forfeiture would only go in mitigation of damages. What has the plaintiff lost? At the time of the act complained of, what did he have which could be taken from him or be in any way interfered with? In *Weedon* v. *Timbrell*, 5 T. R. 357, the court refused to sustain an action of this kind in favor of the husband, who was separated but not divorced from his wife. See *Wyndham* v. *Wycombe*, 4 Esp. 16; *Patterson* v. *McGregor*, 28 U. C. Q. B. 280.

*Ladd & Fletcher* and *Parsons & Johnson*, on the same side.

*Bingham, Aldrich & Remich*, for the plaintiff. 1. The action of *crim. con.* rests upon something more than mere precedent. It is founded upon the first principles of law and public policy. *Ubi jus, ibi remedium.* Bro. Leg. Max. 191; *Ashby* v. *White*, 2 Ld. Raym. 953.

2. The reason upon which the action is based has not passed away. It is founded upon the injury which the husband sustains in being deprived of the comfort, society, and assistance of a pure and virtuous wife, and in being exposed to shame, ridicule, and the hazard of maintaining spurious issue. 2 Bright H. & W. 351; Reeve Dom. Rel. 63. Husbands of to-day are as much entitled to protection in their homes as in the time of Coke and Blackstone. There is nothing in the statutes conferring upon a married woman the right to hold property free from the interference or control of her husband (G. L., c. 183, ss. 1, 12), that indicates that the legislature intended to deprive the husband of the right to protect his

home from pollution, or of his action for damages when the sanctity of his home has been profaned. The argument of the defendant is, that sexual intercourse, rearing a family, and performing the various duties of a good wife, are all services within the meaning of that term. So that the husband can maintain no action against her seducer. If this is good law, he cannot obtain a divorce for her refusal to cohabit, or to perform her marital duties, for she simply exercises her legal rights.

We are not without authority upon this point wherever the question has been raised. Under statutes similar to ours, it is held that a married woman is entitled to the wages for her personal labor or service performed for others, but her husband is entitled to her labor and assistance in the discharge of those duties and relations which arise out of the marriage relation. *Musselman* v. *Galligher*, 32 Iowa 383; *Grant* v. *Green*, 41 Iowa 88; *Peters* v. *Peters*, 42 Iowa 182; *Mewhirter* v. *Hatten*, 42 Iowa 288; *Brooks* v. *Schwerin*, 54 N. Y. 343; *Filer* v. *N. Y. Cen. R. R.*, 49 N. Y. 56; *Reynolds* v. *Robinson*, 64 N. Y. 589; *Birkbeck* v. *Ackroyd*, 11 Hun 365.

In actions for the seduction of his daughter a parent is put on the footing of a master, and the allegation, *per quod servitium amisit*, is essential; but that has never been so considered in the case of a husband, and the form has always been, *per quod consortium amisit*. 3 Blk. Com. 140; Com. Dig., Baron & Feme, W; 1 Saund. Pl. & Ev. 469; 2 Chit. Pl. 642, 854; Reeve Dom. Rel. 63; 2 Bright H. & W. 351; Ham. N. P. 232; 2 Hill. Torts 509; 2 Add. Torts 1084; 2 Bouv. Inst., s. 2279; 3 Bouv. Inst., ss. 3491, 3502; 4 Bouv. Inst., s. 3619; Abb. Tr. Ev. 684, 686; 2 Sedg. Dam. 544, 547; Sch. Dom. Rel. 57; *Massy* v. *Headfoot*, 2 Curran's Speeches 179. No case can be found in the books where it has been held necessary to prove a loss of the wife's services to sustain this action.

3. If the plaintiff's wife left him on account of cruel treatment, it would be no excuse for the defendant's debauching her. It only goes in mitigation of damages. *Sanborn* v. *Neilson*, 4 N. H. 501; Abb. Tr. Ev. 686; *Palmer* v. *Crook*, 7 Gray 418; *Hadley* v. *Heywood*, 121 Mass. 236; *Bromley* v. *Wallace*, 4 Esp. 237; 2 Hill. Torts 509; *Coleman* v. *White*, 43 Ind. 429; *Dance* v. *McBride*, 43 Iowa 624; *Shattuck* v. *Hammond*, 46 Vt. 466; *Lowe* v. *Massey*, 62 Ill. 47; *Smith* v. *Masten*, 15 Wend. 270; *Duberley* v. *Gunning*, 4 T. R. 657; *Bunnell* v. *Greathead*, 49 Barb. 106; *Dallas* v. *Sellers*, 17 Ind. 479; *Ferguson* v. *Smethers*, 70 Ind. 519; *Winter* v. *Wroot*, 1 Moo. & R. 404.

*Ray, Drew & Jordan* and *W. H. Shurtleff*, on the same side.

SMITH, J. 1. When the verdict was returned, and the foreman in the presence and hearing of the other jurors was asked upon

which count the verdict was rendered, no juror dissented from his answer. The inference of assent from their omission of any expression of dissent is conclusive. The practice in this instance is not unusual. *South Hampton* v. *Fowler*, 54 N. H. 197, 201. So far from being objectionable, it is frequently a convenient one, if not quite indispensable.

2. The defendant's requests for instructions and exceptions to the instructions given must stand, if sound, upon the proposition that recent legislation in this state placing married women in regard to their property upon an equality with unmarried women, has repealed the common law giving to the husband an action for criminal conversation for the adultery of his wife. His argument is, that at common law the husband had absolute control over his wife's person, property, and services, and the exclusive right to her earnings; that when she is abducted or commits adultery he is injured in his property interests because the injury is accompanied by the loss of her services; and that the action of criminal conversation stands like the action by a parent for the seduction of his daughter;—in other words, that loss of services is the gist of the action, and being no longer entitled to the services of his wife, he can no longer maintain the action. The maxim, when the reason of a law ceases so does the law itself, is invoked in aid of this position.

The exceptions do not call for any decision of the question what services the wife is entitled, under Gen. Laws, c. 183, s. 1, to perform upon her own account and at her own option, nor for what services she is entitled to earnings or compensation. There are cases which hold, under statutes similar to our own, that the earnings which a married woman is entitled to hold to her own exclusive use, are her wages for services or labor performed for others than her husband, or the proceeds of business carried on by herself, such as dress-making, millinery business, school-teaching, and the like, and that her husband is entitled to her labor and assistance in the discharge of those duties and obligations which arise out of the marriage relation, without compensation. *Musselman* v. *Galligher*, 32 Iowa 383; *Grant* v. *Green*, 41 Iowa 88; *Peters* v. *Peters*, 42 Iowa 182; *Mewhirter* v. *Hatten*, 42 Iowa 288; *Wood* v. *Mathews*, 47 Iowa 410; *Brooks* v. *Schwerin*, 54 N. Y. 343; *Filer* v. *N. Y. Cen. R. R.*, 49 N. Y. 56; *Reynolds* v. *Robinson*, 64 N. Y. 589; *Fry* v. *Drestler*, 2 Yeates 278; *Bigaouette* v. *Paulet*, 134 Mass. 123; *Ogborn* v. *Francis*, 44 N. J. Law 441; 1 Chit. Pl. 134, 167; Abb. Tri. Ev. 405. But we leave this question to be decided when it shall arise.

The fault with the defendant's logic is in assuming that the gist of the action for criminal conversation is the loss of services. Neither of the two cases cited by him in support of this claim is in point. In the first, *Weeden* v. *Timbrell*, 5 T. R. 357, Ashurst, J., said,—" The gist of this action is the loss of the comfort and

society of the plaintiff's wife : that is always inserted in declarations of this kind as a material and substantial allegation, and the forms of pleading are evidence of the law." Both he and Ld. *Kenyon*, C. J., are understood to have meant in their opinions that loss of comfort and society must be proved. They said that the principle of the case is like that of an action by a parent for the seduction of his daughter where slight proof of acts of service done is all that is required to support the allegation in the declaration. In fact, the actual loss sustained by a parent through the diminished ability of his. daughter to render personal service, and the servile position of the daughter, are ordinarily scarcely more than mere fictions by which the jury is enabled to render substantial justice. *Davidson* v. *Goodall*, 18 N. H 423.

The other case cited by the defendant, *Lynch* v. *Knight*, 9 H. L. Cas. 577, was an action by the wife for slander, in which her husband was joined, the special damage alleged being that the words uttered by the defendant imputed to her unchastity, in consequence of which her husband refused to live with her, whereby she lost the comfort, society, and support of her husband. Ld. *Wensleydale* said,—" The assistance of the wife, in the conduct of the household of the husband and in the education of his children, resembles the service of a hired domestic, tutor, or governess ; is of material value, capable of being estimated in money ; and the loss of it may form the proper subject of an action, the amount of compensation varying with the position in society of the parties. . . . It is to the protection of such material interests that the law attends. . . . For these reasons I think the wife has no remedy in the supposed case of the wrongful imprisonment of the husband ; and by parity of reasoning she can have none for being deprived of the society of her husband by the slander of another upon her character, causing him to desert her." If these remarks are relevant in an action by the husband for criminal conversation, they are opposed to the remarks of Ld. *Campbell* in the same case, who said, " The wife is not the servant of the husband, and the action for criminal conversation by the husband does not, like the action by a father for seduction of a daughter, rest on any such fiction as a loss of the services of the wife."

The action for criminal conversation is not given to the husband for an injury to the wife only. He must prove that some right of his own in the person or conduct of his wife has been violated. *Bigaouette* v. *Paulet, supra*. The text-books and decisions declare that the gist of the action is the loss of the comfort and society of the wife. 3 Blk. Com. 139 ; 2 Chit. Pl. 314 ; *Yundt* v. *Hartrunft*, 41 Ill. 12 : *Wilton* v. *Webster*, 7 C. & P. 198 ; 2 Hill. Torts 592 ; *Rigaut* v. *Gallisard*, 7 Mod. 82 ; Bull. N. P. 27 ; Wood Mayne Dam. 665 ; *Weedon* v. *Timbrell*, 5 T. R. 360 ; Ab. Tri. Ev. 685 ; *Chambers* v. *Caulfield*, 6 East 244 ; *Wood* v. *Mathews*, 47 Iowa 409 ; *Egbert* v. *Greenwalt*, 44 Mich. 245 ; *Sanborn* v. *Neil-*

*son*, 4 N. H. 501, 503; *Bromley* v. *Wallace*, 4 Esp. 237, where Ld. *Alvanley* said the injury to the husband is " the keenest of all injuries." And see authorities *passim*. In *Bigaouette* v. *Paulet*, *supra*, Mr. Justice *Allen* said,—"A husband is not master of his wife, and can maintain no action for the loss of her services as his servant. His interest is expressed by the word *consortium;* the right to the conjugal fellowship of the wife, to her company, co-operation, and aid in every conjugal relation. . . . The loss of the *consortium* is presumed, although the wife may have herself been the seducer, or may not have been living with her husband. A husband who is living apart from his wife, if he has not re-nounced his marital rights, can maintain the action, and it is not necessary from him to prove alienation of the wife's affection, or actual loss of her society or assistance. . . . . The essential injury to the husband consists in the defilement of the marriage bed, in the invasion of his exclusive right to marital intercourse with his wife, and to beget his own children. This presumes the loss of the *consortium* with his wife, of comfort in her society in that respect in which his right is peculiar and exclusive."

On the question of validity, the law regards marriage as a civil contract requiring no ecclesiastical sanction. *Londonderry* v. *Chester*, 2 N. H. 268, 278; Brac., *b*. 1, *c*. 5; Plow. 445; Mir. Jus. 104; 1 Blk. Com. 433. But it is something more than an ordinary contract. Smith (N. H.) 527; *Adams* v. *Palmer*, 51 Me. 481, 483; *Maguire* v. *Maguire*, 7 Dana 181, 183; *Ditson* v. *Ditson*, 4 R. I. 87, 101; *Wade* v. *Kalbfleisch*, 58 N. Y. 282, 284. It is an institution of society having its foundation in civil con-tract (1 Bish. M. & D., *ss*. 2, 3), and having certain duties and obligations devolved upon the parties, derived from the law. Other contracts may be modified or released upon consent of parties. Marriage is a social relation, like that of parent and child. It cannot be dissolved by the parties when entered into. " The union is or should be for life. It is equally so in reason, in the common sentiments of mankind, and in the teachings of religion." 1 Bish. M. & D., s. 21. "It has its foundation in nature, and is the only lawful relation by which Providence has permitted the continuance of the race." 2 Kent Com. 75. The public is deeply interested in preserving the institution in its purity. Hence it is " regulated and controlled by public authority, upon principles of public pol-icy, and for the benefit of the community." *Wade* v. *Kalbfleisch*, *supra*.

The marriage contract or marriage duties are violated by adul-tery of one of the parties, and the other party in the adultery is such a party in the violation of the contract or duty that he should be liable in damages. It is not to be presumed that the legislature intended to abolish the right or remedy on that subject, in regulating the property rights of the wife, especially in the absence of any language expressing such interest, or from which

it can fairly be inferred. By placing married women in regard to their property and earnings upon an equality with unmarried women, the law has modified the rights and liabilities of husbands in some material respects. *Harris* v. *Webster*, 58 N. 481, 484. But the incidental changes of conjugal rights and duties are such only as are reasonably and necessarily implied. The adultery of the wife alike alienates her affections from her husband, exposes him to shame and ridicule and the hazard of maintaining spurious issue, whether she is invested by law with the exclusive control and use of her own property and earnings, or whether she is under the common-law disabilities, as to property, of married women. Nor is the degradation of the wife from her adultery any the less sure, or the mental suffering of her husband any the less keen, in the one case than in the other.

3. The other question raised by the instructions given and by those refused is, whether the ill treatment by the plaintiff of his wife can be set up as an answer to the action, or whether it goes in mitigation of damages only. Upon this question the authorities are not unanimous, but the great weight of authority is that such evidence goes in mitigation of damages. *Weedon* v. *Timbrell*, 5 T. R. 357 is an authority the other way, but the soundness of that case was questioned in *Chambers* v. *Caulfield*, 6 East 244. And see Hill. Torts (1st ed.) 594. *Wyndham* v. *Wycombe*, 4 Esp. 16, and *Sturt* v. *Marquis of Blandford*, cited in the same case, deny the right of the husband who is guilty of adultery to maintain the action. There may be other English cases to which our attention has not been called. *Patterson* v. *McGregor*, 28 U. C. Q. B. 280, is the only American case, so far as we have discovered, that follows *Weedon* v. *Timbrell*.

The husband cannot recover if he has been a party to his own dishonor, or has permanently and totally given up all advantage to be gained from the society of his wife, or has condoned the adultery. Moak's Underhill, Torts, 328, and cases cited. But otherwise, the rule as established by the authorities generally seems to be, that the misconduct, neglect, or infidelity of the husband cannot be set up as a defence for the infidelity of the wife in an action for criminal conversation. *Sanborn* v. *Neilson*, 4 N. H. 501; *Bromley* v. *Wallace*, 4 Esp. 237; *Winter* v. *Henn*, 4 C. & P. 494; *Calcraft* v. *Earl of Harborough*, 4 C. & P. 499; Bro. Leg. Max. 268, 260, and cases cited; Abb. Tri. Ev. 686, and cases cited; *Bigaouette* v. *Paulet*, 134 Mass. 123; *Palmer* v. *Crook*, 7 Gray 418; 2 Hill. Torts 594; 15 Am. Law Reg. (N. S.) 458; *Lowe* v. *Massey*, 62 Ill. 47; *Smith* v. *Masten*, 15 Wend. 270; *Harter* v. *Crill*, 33 Barb. 283; *Coleman* v. *White*, 43 Ind. 429; *Hutchins* v. *Kimmell*, 31 Mich. 126; *Dance* v. *McBride*, 43 Iowa 624; *Bunnell* v. *Greathead*, 49 Barb. 106; *Shattuck* v. *Hammond*, 46 Vt. 466; *Rea* v. *Tucker*, 51 Ill. 110; 2 Add. Torts 1084–1086; Big. Lead Cas. Torts 328. The reason of the rule is, that "Any

unhappy relations existing between the plaintiff and wife, not caused by the conduct of the defendant, may affect the question of damages; . . . but they are in no sense a justification . . . of the defendant's conduct. They are not allowed to affect the damages because the acts of the defendant are less reprehensible, but because the condition of the husband is such that the injury which such acts occasion is less than otherwise it might have been." *Hadley* v. *Heywood*, 121 Mass. 236, 239.

If the husband, by his conduct, compels the separation from him of his wife, he may, as to her, have lost his legal right to the solace and comfort of her society, but not as to all the world. His consent is not thereby extended to other men for sexual commerce with her. Although separated from her husband, and by his fault, she remains his wife until divorced, and for her support he is liable. Her enforced separation does not release him from his marital duties. There is always the hope of reconciliation. The proper nurture, training, and instruction of children require the united labor and affection of both parents. Their mutual comfort and support, and the good of society, require that they should live together in one family. The policy of the law encourages them, if living apart, to come together again. Reconciliation would or should be followed by purity in their marriage relation, and happiness in their home. If, while separated, she is debauched, the hope of reconciliation is thereby greatly diminished, and may be wholly extinguished.

4. The letter to Knapp was written for a proper or improper purpose. It was for the jury to say, upon all the evidence upon that point, whether the purpose was, or was not, innocent. The letter tended to show that the defendant resorted to indirect means to procure the attendance of Mrs. Cross, at Lancaster, and, unexplained, that his purpose was an improper one.

5. It does not appear what the contents of the letters to Mrs. Paul were, and, if material, their relevancy may have been so remote that we cannot say, as matter of law, that the court was not justified in finding, as a matter of fact, that the evidence should be excluded. *Watson* v. *Twombly*, 60 N. H. 491, 493.

6, 7, 8. These exceptions relate to the conduct of counsel for the plaintiff, in his closing argument to the jury. It is unnecessary to repeat what was said upon this subject in *Tucker* v. *Henniker*, 41 N. H. 317, and in *Hilliard* v. *Beattie*, 59 N. H. 462. The remarks made in those cases apply with full force in this case. Each party had a moral and legal right to a fair trial upon legal evidence. The court had no authority to permit that right to be violated by the unsworn and incompetent statements of counsel. The wrong done the defendant is not rectified by a presumption that it was done in the excitement of the trial, without deliberation, and without a wrongful purpose. An intent to abstain from an infringement of his right of a fair trial does not alter the fact

that the trial was unfair.   The instruction given the jury to disregard all statements of counsel that were not supported by evidence, falls far short of what the law requires for correcting the error, and it is not found as a fact that the error was harmless.

9. Other exceptions taken at the trial relate principally to the admission or exclusion of evidence.   The principles involved are so well settled that no special mention of them is required.

All the exceptions are overruled, except those numbered 6, 7, and 8, which, for reasons given, are sustained.

*New trial granted.*

CARPENTER, J., did not sit: the others concurred.