Donahue, J.
The primary and most important question presented by this record is whether a wife has a common law right of action against one who wrongfully and maliciously interferes with the marital relationship and deprives her of the society, companionship and consortium of her husband. In the absence of a statute authorizing such recovery her right to maintain this action rests wholly on the common law, and if the common law *336 does not afford her a right of action then she can not maintain this suit, and the demurrer to the petition should have been sustained.
It is very clear that originally the common law recognized no such right in the -wife. By the primitive law, the only member of the family deemed to be harmed by an unjustifiable disturbance of the family relation was the head of the family. Blackstone in his Commentaries, volume 3, pages 142-143, says that these torts directed against the peace and tranquillity of domestic relations are actionable only when committed against the husband. In the case of Lynch v. Knight, 9 H. L., 577, Lord Wensleydale held that: “No recovery could be had without joining the husband in the suit, who himself must receive the money which would not advance the wife’s remedy, and to allow her to recover in such an action would involve the absurdity that the husband might also sue for such a cause.”
It must be remembered, however, that this interpretation of the common law, with reference to the wife’s right to maintain an action of this character, obtained upon the theory that the wife’s personality merged in that of her husband’s, and that she was not then entitled to hold property separate and apart from her husband, and not authorized to bring suit in her own name. Now the legal status of the wife has been changed by legislation. Her legal personality is no longer merged in that of her husband. By force of the several statutes in this state in reference thereto, a husband has no longer any dominion over the separate property of his wife, and she may maintain an action in her *337 own name, without joining her husband in the suit. The right of action growing out of an injury to her personal rights is her separate property for which she may maintain an action in her own name, The right of the wife to the consortium of the husband is one of her personal rights. It therefore follows that the principle of the common law which allowed a right of action to the husband for the invasion of this right, now, under the changed condition of affairs and in view of the present legal status of the wife, applies to her equally with the husband.
It is said by Burdick in his Law of Torts, at page 276, that: “With this change in her legal status, came naturally a change in the judicial conception of her marital wrongs. As she could maintain an action in her own name, and damages recovered would be her sole and separate property, one of the chief objections urged by Lord Wensleydale disappeared. As the law now recognized her legal equality with her husband, Blackstone’s reasoning based upon the superiority of one party and the inferiority of the other party to the marital relation, had no longer the foundation of even a fiction.”
A statutory right can not change except by action of the law-making power of a state. But it is the boast of the common law that: “Its flexibility permits its ready adaptability to the changing nature of human affairs.” So that whenever either by the growth or development of society or by the statutory change of the legal status of any individual he is brought within the principles of the common' law, then it will afford to him the *338 same relief that it has theretofore afforded to others coming within the reason of its rules. If the wrongs of the wife are the same in principle as the wrongs of the husband, there is now no reason why the common law should withhold from her the remedies it affords to the husband.
Hale on Torts on page 278, says: “In natural justice, no reason exists why the right of the wife to maintain an action against the seducer of her husband should not be co-extensive with his right of action against her seducer. The weight of authorities and the tendency of the legislation strongly incline to the latter opinion.”
1 Cooley on Torts (3 ed.), page 477, says: “Upon principle this right in the wife is equally valuable to her as property, as is that of the husband to him. Her right being the same as his in kind, degree and value, there would seem to be no valid reason why the law should deny to her the redress which it affords to him. * * * The gist of the action is the loss of consortium, which includes the husband’s society, affection and aid. The wife may have the action though she continues to live with her husband, and it is held that she may maintain it after a divorce from him.”
This question, however, is fully settled in this state in the case of Westlake v. Westlake, 34 Ohio St., 621. The first paragraph of the syllabus is as follows: “A wife may maintain an action for the loss of the society and companionship of her husband, against one who wrongfully induces and procures her husband to abandon or send her away.” In the opinion on page 627, Gilmore, J., says: “If, in this state, the common law dominion *339 of the husband over the property and personal rights of the wife has been taken away from him and conferred upon her, and remedies in accordance with the spirit of the civil law have been expressly given to the wife for the redress of injuries to her person, property, and personal rights, all of which I hope to show has been done, then it must follow that she may maintain an action in her own name for the loss of the consortium of her husband against one who wrongfully deprives her of it, unless the consortium of her- husband is not one of her personal rights. * * * Under our legislation, the benefit which the wife has in the consortium of the husband is equal to that which the husband has in the consortium of the wife. If, at common law, the husband could maintain an action for the loss of the consortium of the wife, I can see no reason why, under our law, the wife can not maintain an action for the loss of the consortium of the husband. * * * Each acquires a personal as well as legal right to the conjugal society of the other, for the loss of which either may sue separately.”
There can be no reasonable contention but that the wife suffers the same injury from the loss of consortium as the husband suffers from that cause. His right is not greater. than hers. Each is entitled to the society and affection of the other. The rights of both spring from the marriage contract and in the very nature of things must be mutual, and while this was always true of the marriage relation, yet there was a time in the history of our jurisprudence when the legal status of the wife was such that she could not, at common *340 law, maintain an action of this character. Now her legal status is the same as that of her husband. She has the same right to the control of her separate property, the same right to sue in her own name and in a word, is in the full enjoyment of every right that her husband enjoys, so that she comes clearly within the principles of the common law that allow a right of action by the husband for damages for the loss of the consortium of his wife. Either we must hold that the common law is fixed, unchangeable and immutable, that it possesses no such flexibility as will permit its ready adaptability to changing conditions of human affairs, or that when every reason and every theory for denying the wife the same rights as the husband, has entirely disappeared from our jurisprudence, that she is now equally entitled with her husband to every remedy that the common law affords, and we have no hesitation in adopting the latter view.
It is insisted, however, that neither husband nor wife would have a right of action under the facts and circumstances of this case, and our attention is called to the fact that an enabling statute was necessary in order to permit a wife to recover damages to means of support by reason of intoxication caused by sales of liquor to the husband. This, however, is not a similar case. This is not an action for damages for loss of support, or loss of the earning capacity of the husband, but is wholly an action for damages for loss of consortium. Consortium is defined to be, the conjugal fellowship of husband and wife, and the right of each to the company, co-operation and aid of the *341 other in every conjugal relation. Bigaouette v. Paulet, 134 Mass., 123.
This right is invaded whenever a third person through machination, enticement, seduction, or other wrongful, intentional and malicious interference with the marriage relation deprives the husband or wife of the consortium of the other.
The remedy for an invasion of these rights is not in the nature of the action for damages to means of support provided by the statutes relating to the sale of intoxicating liquors. It is said by Tiffany on Persons and Domestic Relations (2 ed.), page 80: “Whatever may have been the principle, originally, upon which this class of actions was maintained, it is certain that the weight of modern authority bases the action on the loss of consortium. * * * The suit is not regarded in the nature of an action by a master for the loss of the services of his servant, and it is not necessary that there should be any pecuniary loss whatever.”
No enabling statute was necessary to authorize a husband to maintain an action for the loss of consortium, and if we.are right in our conclusion that the wife is now equally entitled to maintain this action this contention of the plaintiff in error is completely answered.
The further claim is made by counsel for plaintiff in error that to sustain an action for injury to one’s consortium', the alleged injury must be the result of a force exerted directly upon the marriage relation for the purpose of injuring the plaintiff’s consortium, and the act of the consort responding to that force must not be voluntary, *342 citing Holtz v. Dick, 42 Ohio St., 23. In that case this court declared that: “Where damages are asked for the alienation of affection each case must stand on its own facts.” If the proposition that “the act of the consort responding to that force must not be voluntary” were to be adopted as an arbitrary rule of law in this state controlling each and every case, then few or no such actions as this could be maintained. In the case of Bigaouette v. Paulet, supra, the court held that: “A husband may maintain an action for the loss of the consortium of his wife against the person who has criminal conversation with her, whether such conversation is with or without her consent and although the act caused no actual loss of her services to him.”
The case of Hart v. Knapp, 76 Conn., 135, was a suit by the wife against another woman for the alienating of her husband’s affection by acts of illicit intercourse. In that case the claim was made by the defendant that the wrong was not her wrong, but that of the husband; that her misconduct was induced by the persuasion of plaintiff’s husband, but the court disposes of this contention in this language: “In what she did with the husband, she did with full knowledge that it was wrongful and that it would, as the plaintiff claims it did, result in harm to the plaintiff. The gist of the advice set up in the requests is that the defendant did a great wrong by the persuasion of the husband. We know of no rule of law, civil or criminal, that absolves her .from liability for such wrong because of such persuasion.”
It is claimed that the selling of this drug to Cooper was not the proximate cause .of the dam *343 ages to plaintiff, but that the independent act of Cooper in injecting this morphine into his system was the proximate cause producing the injury complained- of. The jury in its answer to the interrogatories found that neither the defendant nor any of his clerks administered any morphine to Cooper, and that the morphine sold by defendant to Cooper was introduced into Cooper’s system by the independent act of Charles A. Cooper alone. These are, undoubtedly, the physical facts, but they are not all the facts upon which the defendant’s liability to the wife depends.
The record discloses that noth withstanding Cooper had been a victim of the morphine habit for many years, that in the year 1905 he was completely cured of this habit and the jury so finds in its answer to the interrogatories propounded. The wife, however, realizing that because of his former experiences with this drug he would be weaker than the ordinary-man who had never been enslaved by its use, called personally at defendant’s place of business, explained to him the fact, requested him not to sell any morphine to her husband, and according to her testimony' defendant told her that she could not prevent him making such sales if her husband desired to purchase the same. The jury found in its answer to the interrogatories that the defendant continued to sell morphine to Charles A. Cooper after the plaintiff had notified him not to do so. It is true that the sale of morphine is lawful in this state, but it does not necessarily follow that every sale of morphine may be a legal one. The general assembly of this state has by statute provided certain restrictions *344 and imposed upon the seller certain duties in reference to this and kindred poisons, and while the right of the wife to maintain this action does not rest upon these statutes, yet if by reason thereof the sale to her husband was unlawful and resulted in depriving her of the consortium of her husband, the case would present every element necessary to a .recovery, but plaintiff’s rights under the facts and circumstances of this case rest upon a broader foundation than the violation of these statutes, for if in the making of these sales these statutes had been observed to the very letter, the sale might nevertheless be wrongful, and the defendant responsible to the plaintiff for the injuries complained of in her petition.
If it be conceded that after Cooper became cured of the habit of using morphine he possessed sufficient intelligence and discretion to control his own actions and safeguard his own welfare, and that under these conditions the defendant had a legal right to disregard the appeal of the wife and to sell morphine to the husband upon the theory that the independent act of the husband of injecting it into his veins was the proximate cause of the injury complained of, yet the evidence is very clear that there came a time in the history of these sales when Cooper was no longer a free agent capable of controlling his own conduct and capable of exercising an independent judgment in reference to the use of this drug, but on the contrary his intellect had become so weakened and infirm that his power of resisting his craving therefor was entirely destroyed, and he became merely the instrument, or the conduit through which this *345 treacherous poison was transferred from the druggist’s hands into his own system. We are not concerned with the moral wrong of one who turns a deaf ear to the appeals of a wife trying to save her husband from destruction and for greed of gain sells to that husband a drug that is sure to spell his mental and physical ruin, rather are we concerned with the legal aspect of the claim that it is the right of an individual to control his personal affairs regardless of consequences to others. The underlying purpose of our whole social compact is to prevent that very thing, and the principle is as old as the law itself, that every person must control his own conduct and his own property so as to do as little injury as possible to his fellow. From the facts found by the jury the defendant must .have known the growing imbecility of Cooper and the gradual impairment of his power of resistance to the use of this drug. He must have known that Cooper had reached that stage in his course of mental and physical destruction that just so sure as he sold him the poison, Cooper would inject it into his veins. In view of this condition of affairs any warning to Cooper of the dangerous qualities of the drug would be but an absurd attempt to evade responsibility for his own wrongful act.
As well might he intentionally detach a heavy weight from its support on high, that in falling would necessarily strike and injure another, and then say it was not my act in detaching this weight, but it was the force of gravity that caused it to fall to earth, and its falling was the proximate cause of the injury. Individuals must be held to *346 have contemplated the natural and probable result of their own acts purposely and intentionally committed, and it would be just as reasonable to say that due' regard for the rights of others would not require the individual in the ordering' of his own affairs to take into account the force of gravity, as to say that one, who sells morphine to a person known by the seller to be a helpless victim of this drug, is not required to contemplate the natural and probable result of the use the unfortunate purchaser is sure to make of it.
In the case of Wells v. Cook, 16 Ohio St., 72, this court declared that: “The influences of human conduct, good or bad, are far-reaching, and are often seen and felt in consequences exceedingly remote, but uncertain and complicated. It is simply impossible that municipal law should take cognizance of all these consequences.’’ But in this case the consequences are not exceedingly remote. They are the natural and necessary consequences that follow from the defendant’s total disregard not only of his moral but his legal duty to his, fellow-man.
In the case of Holleman v. Harward, 119 N. Car., 150, it was held that: “The sale of laudanum as a beverage to a married woman, knowing that it is destroying her mind and, body and causing loss to her husband, when continued after his repeated warnings and protest, renders the seller liable to him for the damages which he sustains on account of the loss of her services.” In that case it was argued on behalf of the defendant that there - was no legal obligation resting upon him not to sell the drug, nor upon the wife not to use *347 it; that the husband could not prevent his wife from buying and using it; that the duty of the wife to give to her husband her love and companionship was a moral duty, but that this moral duty could not be enforced by any power of the law. The court answered this contention in the' following language: “Notwithstanding the claim of the defendants, we think this action rests upon a principle —a principle not new, but,one sound and consistent. The principle is this: ‘Whoever does an injury to another is liable in damages to the extent of that injury. It matters not, whether the injury is to the property, or the person, or the rights, or the reputation, of another.’ * * * The defendants owed to plaintiff the legal duty not to sell to his wife opium in the form of large quantities of laudanum as a beverage, knowing that she was, by using them, destroying her mind and’ body, and thereby causing loss to the husband.”
In the case of Hoard v. Peck, 56 Barb., 202, it was held that the husband could maintain a right of action for damages against a druggist for selling laudanum to his wife to be used by her as a beverage, in consequence of which use by the wife she became sick and emaciated and her mind was affected so that she was unable to perform her duties as a wife, and her affection became alienated from the husband and he lost her society and was compelled to expend money in medical and other attendance upon her. ■ In that case the claim was made by the defendant that the selling of laudanum is a legal business, and that the husband could have no right of action for damages for *348 such sale, but the court held that although there was no statute in the state of New York prohibiting the selling of laudanum, either as a beverage or for any other purpose, that it did not necessarily follow that every sale of it, in all cases is legal, but on the contrary that its lawfulness or unlawfulness depends on the circumstances of the sale, and the use and purposes to which it is applied. It was further held in that case that it was no defense to the action “that it was her hand that held the potion to her lips; that the druggist by the act of handing it to her for that purpose is as much responsible for the consequences as though he assisted her directly in pouring it down her throat. * * * If one furnishes the means, with the knowledge that it is to be unlawfully used, assenting to such use, he is answerable for the consequences, if the design is carried out.”
The jury in its answer to interrogatories propounded by the defendant found that the defendant was not actuated by any feeling of hatred or actual malice towards the plaintiff. That might be true in every action for damages for loss of consortium, and is probably true in every case where loss of consortium is accomplished by seduction or alienation of affection, but hatred and ill will of the injured person is not necessarily an ingredient of legal malice. If the conduct of the defendant was intentional and wrongful and without any just cause or excuse, malice would be implied. “The term malice, as applied to torts, does not necessarily mean that which must proceed from a spiteful, malignant or revengeful disposition, but *349 a conduct injurious to another, though proceeding from an ill-regulated mind, not sufficiently cautious before it occasions an injury to another. 11 Serg. & R., 39, 40.” This definition fully comprises all the elements of malice as applied to torts, and was adopted by this court in the case of Westlake v. Westlake, supra.
The jury upon the issues joined by the pleadings returned a general verdict in favor of the plaintiff. There is nothing in the special findings of the jury that conflicts with this general verdict. Therefore, the motion of the defendant for judgment upon the special findings was properly overruled.
The judgment of the circuit court is affirmed.

Judgment affirmed.

Spear, Price and Johnson, JJ., concur.