JOAN FELDMAN

v.

DARLENE FELDMAN

June 22, 1984

*Burns, Bryant, Hinchey, Cox & Shea*, of Dover (*James H. Schulte* and *Sharon A. Spickler* on the brief, and *Mr. Schulte* orally), for the plaintiff.

*Steuk, Reams and Shuchman*, of Stratham (*James M. Reams* on the brief and orally), for the defendant.

BROCK, J. This case requires us to determine whether the common-law tort action for criminal conversation should be abolished in this State. The Superior Court (*Temple*, J.), approved the recommendation of a Master (*R. Peter Shapiro*, Esq.), who noted his inclination to adopt the defendant's argument for abolition of the action, but ruled that any such abolition was a "legislative function." We disagree and hold that the action for criminal conversation is no longer available in New Hampshire.

The facts of this case may be briefly summarized. The plaintiff, Joan Feldman, married Ben Feldman in 1962. They had three children between 1963 and 1970, and during that time had a relatively settled relationship. In 1970, Ben acquired a job that called for extensive travel. From that time on, he was frequently absent from the family home for long periods of time, though he changed jobs often and was unemployed or self-employed on various occasions.

Ben Feldman met the defendant Darlene, who was and is an airline stewardess, in Tokyo in 1970 or 1971. He told her that he was divorced. About eight months later they began to date regularly and to engage in sexual relations. In 1972 they moved into an apartment in Los Angeles, and in 1973 they went through a marriage ceremony in Lake Tahoe, Nevada. In 1976 they had a son.

Also in 1976, Ben and Joan Feldman moved to Sharon, Massachusetts, and Ben and Darlene Feldman moved to Londonderry, New Hampshire. In January 1977, Ben and Darlene Feldman purchased a condominium in Londonderry, with Darlene as sole titleholder. Ben's relationship with Joan continued to deteriorate, and when, in February 1981, Joan discovered his marriage to Darlene, she com-

menced divorce proceedings in Massachusetts. She later filed this action for criminal conversation, combined with an action for alienation of affections.

Though Darlene was served with process in the divorce action and in the present action, Ben assured her that the proceedings involved a mere technicality. She continued to live with Ben until the spring of 1982, when she returned with her son to California. She asked her attorney in New Hampshire to inquire into the legal status of Ben's marriage to Joan, and when the attorney advised her in March 1983 that Ben had lied about a previous divorce, she obtained an annulment of her marriage to Ben.

Joan's divorce was granted after a hearing in December 1982, and became final in June 1983. The decree ordered Ben to pay substantial amounts for alimony, child support, and other expenses, none of which had been paid by the time of the trial in this case. Darlene has not sought any support from Ben, either for herself or her son. She continued to work as an airline stewardess throughout her marriage to Ben, as well as before and after. Indeed, it appears that both Joan and Darlene provided the principal support for their respective families for several years prior to 1981, as Ben Feldman's various business ventures frequently lost money.

The master in this case ruled that the plaintiff had not sustained her burden of proof on the count for alienation of affections, because he found that Ben had deceived Darlene as to his marriage to Joan, and that "Darlene did not intend to alienate Benjamin's affections as to Joan." *See Dube v. Rochette,* 110 N.H. 129, 262 A.2d 288 (1970).

On the count for criminal conversation, however, the master denied the defendant's motion to dismiss, ruled for the plaintiff and found damages in the amount of $35,000. He noted correctly that the plaintiff in such an action need only prove an occurrence of sexual intercourse between the defendant and the plaintiff's spouse, and that the only possible defense to the action is consent or condonation by the plaintiff. *Cross v. Grant,* 62 N.H. 675, 684–85 (1883). While noting the "logic" of the defendant's arguments for abolition of the action, the master ruled that "[t]he legislative judgment to allow the continuance [of the cause of action] is one that must be recognized and respected." *See Dube v. Rochette, supra* at 129–30, 262 A.2d at 288–89.

As a common-law tort, the action for criminal conversation is a creation of the judiciary. Consequently, "it is the duty of the judiciary to examine it and make such changes as justice requires when the Legislature has chosen not to act." *Briere v. Briere,* 107 N.H. 432, 434, 224 A.2d 588, 590 (1966). "The legislature expresses

its will by enacting laws, not by failing to do so. Furthermore, its inaction could be motivated by its assumption that if a judicially developed rule is unjust the courts will overrule it." *Merrill v. Manchester,* 114 N.H. 722, 728, 332 A.2d 378, 382 (1974). It follows that the general rule of deference to the legislative intent has no application here, where the legislature has expressed no intent that the cause of action be retained.

An action for criminal conversation may no longer be brought in a majority of American jurisdictions. Louisiana, which is not a common-law state, has never recognized the action. *See Moulin v. Monteleone,* 165 La. 169, 172–73, 115 So. 447, 448–49 (1927). Twenty States and the District of Columbia have abolished the action by statute, while another (Illinois) has severely limited its scope. ALA. CODE § 6-5-331 (1977); CAL. CIV. CODE § 43.5 (Deering 1971); COLO. REV. STAT. § 13-20-202 (1973); CONN. GEN. STAT. ANN. § 52-572f (West Supp. 1984); DEL. CODE ANN. tit. 10, § 3924 (1975); D.C. CODE ANN. § 16-923 (Supp. V 1978); FLA. STAT. § 771.01 (1983); GA. CODE ANN. § 105-1203 (Supp. 1982); ILL. ANN. STAT. ch. 68, §§ 41–47 (Smith-Hurd 1959); IND. CODE ANN. § 34-4-4-1 (Burns Supp. 1983); MICH. COMP. LAWS ANN. § 600.2901 (1968); MINN. STAT. § 553.02 (1982); NEV. REV. STAT. § 41.380 (1979); N.J. STAT. ANN. § 2A:23-1 (West 1952); N.Y. CIV. RIGHTS LAW § 80-a (McKinney 1976); OHIO REV. CODE ANN. § 2305.29 (Page 1981); OR. REV. STAT. § 30.850 (1983); TEX. FAM. CODE ANN. § 4.05 (Vernon Supp. 1983); VT. STAT. ANN. tit. 15, § 1001 (Supp. 1983); VA. CODE § 8.01-220 (1977); WIS. STAT. § 768.01 (1981–82); WYO. STAT. § 1-23-101 (1977).

Six other states have abolished it by judicial decision. *Bearbower v. Merry,* 266 N.W.2d 128 (Iowa 1978); *Kline v. Ansell,* 287 Md. 585, 414 A.2d 929 (1980); *Lynn v. Shaw,* 620 P.2d 899 (Okla. 1980); *Fadgen v. Lenkner,* 365 A.2d 147 (Pa. 1976); *Hunt v. Hunt,* 309 N.W.2d 818 (S.D. 1981); *Irwin v. Coluccio,* 32 Wash. App. 510, 648 P.2d 458 (1982).

Commentators in recent years have invariably called for the action's abolition or for severe restrictions on its scope. *See, e.g.,* Kavanagh, *Alienation of Affections and Criminal Conversation: Unholy Marriage in Need of Annulment,* 23 ARIZ. L. REV. 323, 340 (1981); Note, *The Case for Retention of Causes of Action for Intentional Interference with the Marital Relationship,* 48 NOTRE DAME LAW. 426, 433–34 (1972) (hereinafter NOTRE DAME Note).

The reasons for this accelerating trend toward abolition are easily found. The action's potential for injustice, resulting principally from the lack of available defenses, is apparent in cases like the present one. As the master found, the defendant here did not

intend to harm any of the plaintiff's interests and had no reasonable grounds before 1981 either to disbelieve Ben Feldman's story of a prior divorce, or to foresee the possibility of a suit like this one. Yet none of these facts could help her avoid liability.

■ This arbitrariness reflects the action's origin as a means of protecting the husband's absolute right to his wife's services. NOTRE DAME Note, *supra* at 427. The wife's consent to, or even initiation of, the adultery was no defense because "it was thought at common law that a wife was not competent to give her consent so as to defeat her husband's interest." *Fadgen v. Lenkner, supra* at 150 (citing *Tinker v. Colwell*, 193 U.S. 473, 483 (1904)). The defendant's ignorance of the marriage was irrelevant because "[a] man who has sexual relations with a woman, not his wife, assumes the risk that she is married." *Antonelli v. Xenakis*, 363 Pa. 375, 378, 69 A.2d 102, 103 (1949). It was not necessary to show that the adultery caused a breakup of the marriage, or even that the husband and wife were living together at the time. *Cross v. Grant*, 62 N.H. at 684.

Later extension of the action to permit suits by wives as well as husbands, *Seaver v. Adams*, 66 N.H. 142, 144, 19 A. 776, 777 (1889), and attempts to justify its existence as a means of compensating for "the loss of the comfort and society" of a spouse resulting from that spouse's adultery, *Cross v. Grant*, 62 N.H. at 683, have not eliminated either the action's potential for abuse or the flawed assumptions on which it is based.

■ In this regard, we agree with the assessment of the Oklahoma Supreme Court:

> "The action does not prevent human misconduct and the interests which the action seeks to protect are not protected by its existence. Viable contented marriages are not broken up by an outsider, and the harm engendered through the opportunity for blackmail and the ruination of defendant's reputation by the mere [br]inging of the action far outweighs any reasons for its continuance."

*Lynn v. Shaw*, 620 P.2d at 902. More importantly, the action "diminishes human dignity," *id.*, by treating spousal affection as a property right. "The love and affection of a human being who is devoted to another human being is not susceptible to theft." *Hunt v. Hunt*, 309 N.W.2d at 821.

■ The legislature recognized this principle when it effectively abolished the action for alienation of affections. RSA 460:2. It further recognized the inefficacy of arbitrary legal rules in preserving marital harmony when it authorized "no-fault" divorce. RSA

458:7-a. Such statutes merely serve to confirm the lack of any viable legal rationale for the continued existence of a tort action which essentially seeks to punish an activity without reference to either the activity's motivation or its results. Accordingly, we hold that the tort of criminal conversation is no longer a valid cause of action in this State. The defendant's motion to dismiss should have been granted.

*Reversed.*

All concurred.