GAULT *v.* CONCORD RAILROAD.

A request, made by the payer of a disputed claim that the payee will not disclose the settlement, is not competent evidence of the payer's admission of liability.

The effect of a bridge as an obstruction of a river may be a subject for the testimony of experts; and their opinions are not excluded by the question being the issue to be decided.

An allusion of counsel to the importance of the case to his client, not found to be unfair or prejudicial in fact, *held* not to be of such a character as to show a mis-trial as a matter of law.

CASE, for the unskilful and improper construction of the defendants' bridge at Hooksett falls, causing the river to overflow the plaintiff's land. Verdict for the defendants. To show the defendants' admission of liability, the plaintiff called Hazelton, who testified, in the absence of the jury, to the settlement of a similar suit brought by him against the defendants, their payment of the damages he demanded, the continuance of his case after its settlement, and his keeping the settlement secret at their request. The court, finding the settlement was a compromise of a claim the validity of which the defendants denied, and was not an attempt to conceal or suppress evidence, excluded the testimony, and the plaintiff excepted. Subject to exception, three witnesses, called by the defendants and found by the court to be experts in hydraulic engineering, were allowed to testify that in their opinion the defendants' piers and abutment do not obstruct the stream so as to affect it at the plaintiff's land, a mile above the bridge; and that the piers are properly located and constructed. The jury were instructed that the propriety of location and construction was immaterial; that the plaintiff could recover if the bridge caused his land to be overflowed. Subject to exception, the defendants' counsel, in his closing argument, said if the case is important to the plaintiff, as he had claimed in his opening statement, it is much more important to the defendants, on account of the forty-eight pieces of land on the river situated like the plaintiff's; the jury should not be diverted from the consideration of the facts on which alone a true verdict could be rendered, and should not be influenced by prejudice; many of the plaintiff's witnesses owning lands on the river were interested; if the plaintiff should prevail, their opportunity for bringing suits would come, and the plaintiff would be a witness for them.

*Copeland & Jones*, for the plaintiff. The question, whether the defendants' settlement with Hazelton was a compromise of a disputed claim, or an admission of liability for damage caused by the bridge, was a question of fact, and should have been submitted to the jury. The evidence shows, not a compromise, but an admission, and an attempt to suppress evidence.

The effect of the piers and abutment in holding back the water is not a subject for expert testimony. 1 Gr. Ev., s. 440; *Jones* v. *Tucker*, 41 N. H. 546. The opinions of the experts were improperly admitted upon the very question to be decided by the jury. 1 Gr. Ev., s. 440, *n.*

_ The defendants' counsel was allowed to present an irrelevant and prejudicial argument. The encouragement a verdict for the plaintiff might give the owners of forty-eight other pieces of land to bring suits is not a matter to be considered by the jury, and the plaintiff's right of fair trial should be fully protected. *Tucker* v. *Henniker*, 41 N. H. 317, 322; *Brown* v. *Swineford*, 44 Wis. 282; *State* v. *Foley*, 45 N. H. 466; *Zollar* v. *Janvrin*, 47 N. H. 324, 326; *Hilliard* v. *Beattie*, 59 N. H. 462.

*J. W. Fellows* and *Chase & Streeter*, for the defendants. The settlement of Hazelton's suit was properly excluded. 1 Gr. Ev:, ss. 19, 192; Best Prin. Ev. 70; *Bartlett* v. *Hoyt*, 33 N. H. 151, 166; *Jones* v. *Tucker*, 41 N. H. 546; *Creach* v. *McRae*, 5 Jones (N. C.) 122. Such cases as *Perkins* v. *Railroad*, 44 N. H. 223, *Coffin* v. *Plymouth*, 49 N. H. 173, *Grimes* v. *Keene*, 52 N. H. 330, and *Gray* v. *Rollinsford*, 58 N. H. 253, seem to rest upon an undisputed liability, or an offer or payment proved or assumed to be unqualified and independent of a pending negotiation. The doctrine of *Coffin* v. *Plymouth* had the approval of a majority only of the court, and is encumbered with grave difficulties. It goes to the extreme verge of the law, and is confined in its application strictly within the limits assigned in that case and in those which have followed. *Davis* v. *Manchester*, Hillsborough, December, 1882.

The effect of the abutment and piers complained of upon the flow of the water, and the back flow or flowage upon the plaintiff's land situated a mile or more up the river, is a subject upon which a hydraulic engineer should be admitted to testify his opinion. It is not only fairly within the class of subjects upon which experts may give their opinions, but it is eminently such, and one upon which that kind of evidence is very essential, if not absolutely necessary, to enable a jury to arrive at an intelligent and correct conclusion in cases where such matters are involved. The subject of " back flow," " back water," and obstructions either wholly or partially retarding the stream, causing " flowage," " lateral extension," eddies, &c., has long been deemed worthy of scientific investigation and study. Works upon hydraulics contain the laws, formulæ, theories, and discussion of the subject, from a scientific view. Rankin's Civil Engineering—subject, The Flow of Water in Rivers and Canals; De Voisin, Treatise of Hydraulics—subject, Back-Water, Eddies, &c., and particularly the section treating upon back-water caused by bridges and narrowing the water-way, *c.* 2, *p.* 146; Wiesback, Manual of Mechanics and Civil Engineering, c. 8. De Voisin speaks of the flow of water being interrupted by dams, weirs, piers, abutments, objects projecting into the stream; the bed of the river, inclination of the surface; the discharge of the water, into which enters the velocity as one of the most important factors; the volume, whether irregular and affected by floods and freshets, or maintaining a steady and uninterrupted flow; and

the "law of diminution" of velocity from the surface to the bottom, which has undergone the most careful investigation and mathematical determination. Wiesback says the flow of rivers is often affected by causes unobserved except by the practised eye; and after enumerating many of them, he remarks that these often put to the severest test the skill and judgment of engineers. The laws of equilibrium and motion of water in streams, eddies, back-flows, swift and slow currents, velocity and capacity of cross sections, have been reduced to mathematical formulæ. Attention is called to these works and the remarks of their authors upon the subject of flowage, merely to emphasize our assertion that this subject of the effect of objects either wholly or partially impeding or modifying the flow of water in rivers has been the study, and is a proper matter for civil or hydraulic engineers to testify their opinion upon.

The plaintiff says that the question whether the piers and abutment hold the water back, &c., so that it remains longer upon his land than it did before the bridge was built, is not a question of any science or trade. There are two inquiries in this proposition: First, whether the water did remain longer on the meadow on some occasion after the bridge was built than before; second, if so, why? Could the piers have been the cause? It becomes a scientific inquiry at once, and involves the consideration of the effect of all the objects and forces which enter into the problem. The person who has not made the subject a study can only testify to his observation of a fact, in the case of high water on certain days, but he cannot state whether the piers were the cause; but the hydraulic engineer, who has given the natural laws governing the flow of water, and the effect of the countless objects and influences which control it, a long and patient investigation, can render valuable aid to the jury in arriving at a proper conclusion. In an early case, where the question was whether an embankment which had been erected to prevent the sea from overflowing meadows had caused the choking up of a harbor, the opinions of scientific men as to the effect of the embankment were held admissible. Lord *Mansfield* said,—"Soon after the bank was erected the harbor went into decay  The question is, What caused the decay? The defendant says it is the bank, because it prevents back-water. This is a matter of opinion: the whole case is a question of opinion. Nobody can swear that it was the cause." *Folkes* v. *Chadd*, 3 Doug. 156. In a case where the question was whether certain drains did or did not injuriously affect a certain fountain belonging to the plaintiff, engineers having examined the intervening soil, made measurements, &c., their opinions were admitted; and also in the same case certain persons, who had made digging of wells a business, and become acquainted with the soil in that vicinity, were admitted to give their opinion whether the drain complained of could injure the fountain in question. *Buffum* v. *Harris*, 5 R. I. 243. In a suit for damages by smoke, soot, &c., to fruit-trees, the opinions of

gardeners experienced in such matters were taken as experts. *Vandine* v. *Burpee*, 13 Met. 288. The great number of cases touching this subject relate more directly to their qualification, &c., but they indirectly disclose the class of subjects about which it is proper for experts to testify. It is said that persons who have greater opportunities for observation and study respecting certain subjects, which give them superior skill in relation to those subjects, entitle their opinions to be received in evidence as expert. Best Pr. Ev. 649; *Robertson* v. *Stark*, 15 N. H. 109; *Page* v. *Parker*, 40 N. H. 59; *Dole* v. *Johnson*, 50 N. H. 453

The testimony of the three witnesses was competent even without claiming them to be .experts, for the facts upon which they based their opinion having been obtained by their examination, measurements, and ascertained results, and stated by them, they could testify their opinion. *Culver* v. *Haslam*, 7 Barb. 314; *De Witt* v. *Barley*, 13 Barb. 550. In the latter case the subject of expert testimony is very exhaustively discussed, and the American and English authorities reviewed.

Doe, C. J. The defendants attempted to conceal nothing but their settlement of Hazelton's suit. The salutary policy of encouraging the settlement of suits and other controversies by protecting the payer against his act of payment being used as an admission of his liability, allows him to stipulate for the secrecy which the law preserves. The request that Hazelton would not divulge the compromise was no more an admission than the compromise itself. The settlement of suits is not to be discouraged by a narrow application of a principle so essential to the interests of society. The rule, so administered as to require a resistance of every claim the settlement of which would practically make other claims irresistible, would be a hardship, subjecting claimants in many cases to expensive litigation which they ought not to be thus compelled to undergo.

The testimony of the experts was admissible on the effect of the bridge as an obstruction of the river. Their opinions on that question were not excluded by its being the issue submitted to the jury. Opinions on questions of identity, handwriting, sanity, and the value of property, are not rejected on the ground that those are the questions to be decided.

Argumentative allusions to the importance of the case to either party are apt to take an objectionable form, and to be carried to an extent inconsistent with legal fairness of trial. In this case it does not appear that the subject was presented on either side upon a statement of any fact not proved, or in a manner suggesting the justice or benevolence of a verdict rendered on an illegal ground, or diverting the tribunal from a due consideration of the evidence. While the allusions on both sides were probably unnecessary, irrelevant, and dangerous, the second does not seem to have been an

excessive reply to the first, or to have been of such a character as to make it a matter of law that there should be a new trial, the fact of unfairness and prejudice not being found.

*Judgment on the verdict.*

SMITH and BINGHAM, JJ., did not sit: the others concurred.