Hillsborough, }
June, 1900. }

## STORY v. CONCORD & MONTREAL RAILROAD & a.

Where an action is brought against several defendants, the question whether justice and convenience require separate trials is one of fact determinable at the trial term.

In an action against a railroad company to recover for injuries to a servant resulting from the defective condition of tracks over which the employer's trains are operated, it is no defence that such tracks were owned, controlled, and repaired by another corporation.

A servant who is aware that premises furnished for his use by the master are under the exclusive control and management of a third person does not assume the risk of the latter's negligent failure to repair as a danger incident to the employment.

Where there is a conflict in testimony, the untruthfulness of witnesses upon either side of the controversy is a legitimate matter for argument.

Improper remarks of counsel in argument do not furnish ground for setting aside a verdict unless objected to when made; and an objection is not effectual until it is made known to the presiding justice, and an exception claimed.

A verdict will not be set aside because of prejudicial argument founded on competent evidence relating to a material issue.

CASE, to recover for injuries received August 26, 1894, in the railroad yard at Portsmouth, by the derailment of an engine of the Concord & Montreal Railroad on which the plaintiff was fireman. The plaintiff was the servant of the Concord & Montreal Railroad. It was alleged that the derailment was due to the defective condition of the track, which was owned and repaired by the Boston & Maine Railroad. The suit was brought against both corporations. At the opening of the trial, the defendants moved for separate trials and that the plaintiff be required to elect against which defendant he would then proceed. The motion was denied, subject to exception. The defendants' motion for a nonsuit was also denied, subject to exception. At the close of the evidence a verdict was ordered for the Boston & Maine Railroad. Subject to exception, the court refused to direct a verdict in favor of the other defendants, the Concord & Montreal Railroad. The facts and other exceptions taken are stated in the opinions.

*Burnham, Brown & Warren* and *Samuel W. Emery*, for the plaintiff.

*Oliver E. Branch* (with whom were *William H. Sawyer* and *Frank S. Streeter*), for the defendants.

I.   Assuming for the purposes of this argument that the track was defective and out of repair, a question of law is presented touching the liability of the Concord & Montreal Railroad.   The accident happened upon the tracks of the Boston & Maine Railroad, which were under the exclusive control and management of that corporation.   The Concord & Montreal Railroad entered upon the tracks several hundred feet southwest of the point of derailment.   The plaintiff was aware of the facts in relation to the tracks and their management.   There was no contract or arrangement as to the use of the tracks, but there was some understanding between the roads that the matter was to be adjusted at some time, and the compensation was adjusted after the accident.   In brief, the accident happened on the tracks of the Boston & Maine Railroad, which were exclusively under their control and management, the repairs on which were made entirely and exclusively by their section-men, all of which was known by the plaintiff.

We say that the Concord & Montreal cannot be liable in any aspect of this case.   The Concord & Montreal trains and their servants were rightfully on these tracks.   The Boston & Maine owed to the Concord & Montreal and their servants, including the plaintiff, the duty of maintaining those tracks in a reasonably safe and suitable condition.   This duty did not arise out of contract, supposing a contract to have existed, nor from any understanding between the two roads, nor by any rule of law applicable to the relation of master and servant.   It was a duty which the law imposed upon the grounds of public safety.

The relationship between the two roads, and their respective rights and duties, are illustrated in the case of *Sawyer* v. *Railroad*, 27 Vt. 370.   In that case a railroad company, under an agreement with another railroad company, operated trains upon a section of the latter's track, from which diverged a side track, which side track was under the exclusive control of the latter. An engineer on one of the trains of the former received injuries occasioned by the negligence of the servants of the owners of the track in leaving the switch open at the intersection of the main and side tracks.   His action was brought against the latter company.   It was contended upon the part of such company that their duty in respect to the premises was governed by contract with the other company, to which alone they were responsible, and also that the injured servant must seek redress from the master in whose employ he was, when the question of liability would be determined

by the law regulating the liability of the master to his servant; and that in any event, unless the servant had a right of action against his master, he could not recover in an action brought against the defendants. It was said by the court that the gist of the action did not arise upon a contract between the parties, but from the mere observation of a duty imposed by law. The fact of the existence of a contract was only material as showing that the plaintiff was lawfully upon the road at the time, and was not a trespasser. The rule was applied that it was the duty of the company owning the track to keep the road in a safe and proper condition for use, and to exercise that care in the management of the switch as reasonably would prevent injury from that source ; that the obligation to perform that duty was co-extensive with the lawful use of the road, and was required as a matter of public safety ; and that this duty was created by law, and existed irrespective of any contract. This case was re-examined and affirmed in *Merrill* v. *Railroad*, 54 Vt. 200, 208, 209.

In *Nugent* v. *Railroad*, 80 Me. 62, the plaintiff was a brakeman in the employ of a railroad which, by agreement with the defendants, was permitted to run trains over their tracks. The plaintiff was ascending a ladder on the side of a freight car when his head came in contact with an awning at the defendants' station and he was injured. It was held that the defendants owed the plaintiff the duty to construct and maintain the station in such a reasonably safe manner that the awning would not injure him while in the performance of his duty with due care ; and that a negligent breach of that duty having resulted in a personal injury to the plaintiff, without fault on his part, he was entitled to maintain his action therefor. See, also, *Smith* v. *Railroad*, 19 N. Y. 127 ; *Snow* v. *Railroad*, 8 Allen 441 ; *Robertson* v. *Railroad*, 160 Mass. 191 ; Pierce R. R. 274 ; 2 Elliott R. R., s. 477.

II. The tracks being owned by the Boston & Maine Railroad, and being kept in repair solely by them, and their use by the Concord & Montreal being by permission only, all of which was known to the plaintiff, the failure to repair them or keep them in order would constitute neither a joint tort, nor a joint and several tort of both companies, but the several tort of the Boston & Maine only ; and a failure of the Boston & Maine to perform that duty would be, as against the Concord & Montreal, a risk which the plaintiff assumed, and so modified the ordinary rule of responsibility and duty which obtains between a railroad company and its employees.

What is the test of a joint liability? Who are joint tort-feasors? The principle is well stated in *Williams* v. *Sheldon*, 10 Wend. 654 : " There must be a concert of action and co-operation to make sev-

eral persons jointly liable." *Guille* v. *Swan*, 19 Johns. 381 ; *Wood* v. *Sutcliffe*, 8 Eng. L. & Eq. 217 ; *Chipman* v. *Palmer*, 77 N. Y. 51. In *Boyd* v. *Insurance Patrol*, 113 Pa. St. 269, it was said: " Where, through the sole negligence of one of two persons engaged in a common purpose, an injury is done, the person actually the cause of the injury is alone liable." In *Chipman* v. *Palmer*, 77 N. Y. 51, it was said: " The fact that it is difficult to separate the injury done by each one from the other furnishes no reason for holding that one tort-feasor should be liable for the acts of others with whom he is not acting in concert." See, also, Busw. Pers. Inj., s. 31 ; *Vosbury* v. *Morse*, 1 Cush. 453. " Where two companies are using the same track, under proper rules and regulations as to each other, the negligence of the employees of one company causing injury to an employee of the other is, so far as the latter company's responsibility is concerned for the act, a risk assumed by its servant." 2 Bailey Pers. Inj., s. 3150, citing *Chicago etc. R. R.* v. *Clark*, 92 Ill. 43.

If it be said that it was the duty of the Concord & Montreal to furnish a reasonably safe track for the plaintiff wherever he might be in their employ, it is admitted that this would be true as a general proposition; but when the plaintiff knew that this particular track did not belong to the Concord & Montreal, that they had no control over it, and could have no control over it except permissibly, that they did not undertake in any way to control or repair it, and that so far as that work was concerned, it was undertaken and assumed entirely by the Boston & Maine, he assumed the risk of its not being done by the latter corporation. He knew that this track might wear out or become out of repair, and that if it did the Concord & Montreal would not repair it. He had no right to expect that they would do so; but, on the other hand, he knew that it would be done or neglected by the Boston & Maine, and, therefore, as to the Concord & Montreal he accepted the risk of a failure to repair.

We therefore say in brief upon this branch of the case: The track and yard being property of the Boston & Maine which was used by the Concord & Montreal by permission of the Boston & Maine, controlled by their servants and repaired by their servants entirely and exclusively, all of which was known to the plaintiff, the legal duty of keeping them in repair was exclusively that of the Boston & Maine, and the risk of their becoming out of repair was thereby assumed by the plaintiff, as against the Concord & Montreal.

PARSONS, J. Whether justice and convenience required separate trials was a question of fact determined by the ruling of the presiding justice. *Eames* v. *Stevens*, 26 N. H. 117, 121.

The Boston & Maine Railroad having been discharged by a verdict in their favor, to the direction of which by the court no exception appears to have been taken, the only question is whether, upon the facts stated, the verdict found by the jury against the Concord & Montreal Railroad should stand.   As the case is presented to us, the Concord & Montreal Railroad are the sole defendants.

It appears that the plaintiff, a locomotive fireman in the employ of the defendants, was injured while in the course of his duty because of a defect in the track, as he alleges, over which, by direction of his employers, the locomotive upon which he worked was passing.   The track claimed to be defective was not a part of the defendants' railroad, but was owned and kept in repair by another railroad corporation which had exclusive control over it.   The plaintiff knew these facts.   The use of this track by the defendants was rightful, but the precise terms upon which they enjoyed such use did not appear.   At the trial, the defendants' motion that a verdict be ordered for them was denied.   The first question considered under the defendants' exception to the denial of this motion is whether the fact that the alleged defective track was neither owned, managed, nor kept in repair by the defendants, to the plaintiff's knowledge, relieves them of liability for non-performance of the master's duty to provide suitable and safe appliances for the use of the servants in his employment.

" This duty may be, and in case the employer is a corporation must always be, discharged by agents and servants, and the agent or servant charged with its performance, whatever his rank of service may be, stands in the place of the employer, who thereby becomes responsible for his acts and chargeable with the negligence of such agent or servant."   *Jaques* v. *Company*, 66 N. H. 482, 484 ; Pierce R. R. 369.   As the employer is not discharged by delegating this duty to a servant or a number of servants, the delegation of the duty to a corporation as servant or agent would not relieve him.   What the contract for the use of the Boston & Maine track by the defendants was, is immaterial.   Neither road, by agreement with the other, could relieve the other of any liability as to third persons which the law imposes.   Under whatever names they were styled in their agreement, if there was one, the undisputed fact of the rightful use by the defendants of a portion of the Boston & Maine tracks, cared for and repaired by the Boston & Maine, established that the Boston & Maine were the agency employed by the defendants in the performance of their duty of furnishing a safe and suitable track for their employees.   Having either by express agreement or by permissive use of the Boston & Maine track employed that corporation as their agent in the performance of

their master's duty, the defendants thereby become responsible for the acts and chargeable with the negligence of such agent; and as the corporation thus made the defendants' agent and servant could act only through their agents and servants, the defendants became responsible for the acts and chargeable with the negligence of the individual employees of that corporation, who were personally charged with the duty of inspection and repair owed by the defendants to their servants.

*Murch* v. *Railroad*, 29 N. H. 9, was an action by a passenger of the Northern Railroad to recover for injuries alleged to have resulted to him from a defect in the track of the Concord Railroad, of which, at the point and time of the alleged injury, the Northern Railroad was in permissive use. In the decision of the questions thereby arising this court said (*p.* 35): "By using the railroad of another corporation as a part of their track, whether by contract or mere permission, they [the Northern] would ordinarily, for many purposes, make it their own, and would assume toward those whom they had agreed to receive as passengers all the duties resulting from that relation as to the road; and if accident resulted to such passengers from any failure of duty of the owners of the road, for which they would be responsible if the road was their own, their remedy over would be against the owners."

In that case the plaintiff's claim against the Northern Railroad arose from his contract of carriage. In the present, the plaintiff relies upon the obligations implied in his contract of employment. *Fifield* v. *Railroad*, 42 N. H. 225. Though the requirements of the contract in the case of a passenger and an employee differ in degree, the principle upon which the claim of each is founded is the same,— the failure of the other party to the contract to exercise such care as is demanded by the relation mutually assumed. As stated by *Knowlton*, J., in *Engel* v. *Railroad*, 160 Mass. 260, 263: "The duty of a railroad corporation to furnish for its employees safe tracks, cars, locomotive engines, and other machinery, tools, and appliances with which its business is to be carried on, is similar in kind to its duty to passengers in these respects, although the degree of care required is less. In either case, its duty is the same when the tracks . . . are hired, or used under a license from others, as when they are owned by the employer." *Spaulding* v. *Granite Co.*, 159 Mass. 587; *Wisconsin etc. R. R.* v. *Ross*, 142 Ill. 9; *Stetler* v. *Railway*, 46 Wis. 497,— *S. C.*, 49 Wis. 609; *Little Rock etc. R'y* v. *Cagle*, 53 Ark. 347; *Smith* v. *Railroad*, 18 Fed. Rep. 304.

It is suggested that since the defendants' trains were rightfully using the Boston & Maine tracks that corporation owed to the defendants and their servants the duty of maintaining the track in

a reasonably safe and suitable condition for use — a duty arising not out of contract, nor from the relation of master and servant, but which the law imposed upon the grounds of public safety. It may be assumed that this claim correctly states the law. Pierce R. R. 274; *Sawyer* v. *Railroad*, 27 Vt. 370; *Merrill* v. *Railroad*, 54 Vt. 200; *Snow* v. *Railroad*, 8 Allen 441; *Robertson* v. *Railroad*, 160 Mass. 191; *Nugent* v. *Railroad*, 80 Me. 62. But the liability of the owner of the track, if established, does not relieve the defendants of their master's duty. "In many instances several parties may be liable in law to the person injured, while as between themselves some of them are not wrongdoers at all." *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 160. As the case now stands there is no question of joint liability. The Concord & Montreal are the sole defendants. That parties are not jointly liable for an injury, because not jointly negligent, does not establish that they are not severally liable. *Mulchey* v. *Society*, 125 Mass. 487; *Parsons* v. *Winchell*, 5 Cush. 592; Shearm & Red. Neg., ss. 244, 248; Busw. Pers. Inj., s. 31. That the parties are not joint tort-feasors so as to be jointly liable in trespass does not establish that each may not be a wrongdoer as to the party injured. One who is liable for an injury may recover of another wrongdoer the sums he has been compelled to pay by the latter's negligence, if as to the latter he is without fault. *Nashua Iron and Steel Co.* v. *Railroad, supra; Old Colony R. R.* v. *Slavens*, 148 Mass. 363. Whether under the circumstances there would be a right of recovery of one corporation from the other, it is not necessary to inquire. It is sufficient that such right, if existent, does not affect the plaintiff. The defendants' breach of duty for which the plaintiff seeks to recover is severable and distinct from the breach of duty for which it is suggested the Boston & Maine might be liable to him. The wrong of one does not excuse or justify the wrong of the other.

It is also suggested that the plaintiff assumed the risk of running over a track owned by another railroad, and which he saw was repaired by the employees of that corporation and not by the employees of the defendants. That the servant assumes the risks ordinarily incident to his service, and also the special hazards arising from the master's peculiar methods which the servant knows and of which due care would inform him, is settled. But there was no evidence tending to show that the plaintiff knew or ought to have known the track was defective, or that the owners' employees were negligent in their care of it. He did not know, and it does not appear conclusively as matter of law that he ought to have known, that the defendants furnished him an unsafe track; therefore he did not assume the risk of such a track. The extent of his knowledge was that the defendants provided a track

through some arrangement made with the owners of the track. His knowledge that the Boston & Maine employees repaired the track and that the defendants did not, was not an assumption of the risk of negligence of the persons doing that work. In *Jaques* v. *Company, supra*, the plaintiff knew that the loom-fixer, Burke, was employed to repair her loom. Her knowledge of Burke's employment was not an assumption of the risk of his negligence. Mere knowledge by the servant of the persons or agencies employed by the master to perform the master's personal duty toward him is not an assumption of the risk of negligence by such particular persons or agencies. If it were, the master's personal liability would be at an end.

As it is not claimed that Boston & Maine tracks generally were so unsafe, and their employees so habitually negligent in the repair of them, as to present a special danger in running upon the tracks of that corporation, or that there was some peculiar hazard in running a Concord & Montreal engine on a Boston & Maine track, of which danger or hazard the plaintiff knew or ought to have known, he is not chargeable with the assumption of the risk of the track by his knowledge that the track was owned and controlled by the Boston & Maine. Whether he understood, or whether in fact, the Concord & Montreal by employees of their own inspected the track, or whether the defendants relied upon the inspection made by the employees of the Boston & Maine, is immaterial. The Concord & Montreal could make such inspection only through agents or servants. Whether it employed inspectors directly or through the agency of the Boston & Maine, whether the actual inspectors were carried on the defendants' pay-roll or whether the defendants paid for their services in the adjustment made for the use of the track in accordance with or in the absence of prior contract, or whether nothing was paid for the use of the track, the actual inspectors, whether directly in the employ of the one corporation or the other, were the agents adopted by the defendants for the performance of their master's duty, and for their negligence the defendants are responsible. *Wabash etc. R'y* v. *Peyton*, 106 Ill. 534, 540.

The remaining ground urged in the support of the defendants' exceptions to the denial of their motions for a nonsuit and a verdict does not call for extensive consideration. It cannot be said, as a matter of law, that the testimony of the plaintiff and the four witnesses called by him as to the condition of the track and rotten ties disclosed at the derailment is untrue. Nor, conceding the truth of this testimony, can it be said that reasonable men might not infer therefrom that the defective track caused the accident, and that the defective conditions existing could have been discov-

ered by reasonable care in inspection before the injury. There-
fore, the motion for a nonsuit was properly denied. The defend-
ants' evidence did not alter the situation. It did not furnish an
uncontradicted answer to the plaintiff's case, assuming the plain-
tiff's evidence to be true, but answered the plaintiff's case by con-
tradicting it. The defendants' case was that there were no rotten
ties, that the track was in good condition, and that the accident
was due solely to the negligence of the engineer in running at
excessive speed upon the cross-over. Which party was entitled to
the verdict depended upon the weight of the evidence. Upon this
question our impressions are not material. The weight of evi-
dence is for the jury and not for the court. *Abbott* v. *Railroad,*
69 N. H. 176. The evidence of the railroad employees that they
inspected the track and discovered no defect was merely an an-
swer to the testimony of the plaintiff's witnesses as to the facts as
they found them and to the inference which might be drawn from
the condition described by them, that there was no efficient in-
spection because the defect was not discovered and remedied before
the accident. It was for the jury to say which contention was
true. As the case contains substantial evidence of some weight
in support of the plaintiff's contentions, it was properly submitted
to the jury. The exceptions to the denial of the motions for a
nonsuit and a verdict are overruled.

The remaining exceptions relate to the argument of counsel.
The limit of the privilege of counsel in legitimate advocacy in
behalf of his client has been thoroughly considered by the court in
numerous cases of comparatively recent date. The present case
does not raise any new question, but in view of the repeated pre-
sentation of the question it is thought that a brief reference to the
application of these principles which has been made may be of use.

The following statements were held improper and verdicts ob-
tained by the counsel making them were set aside, except where a
finding was obtained from the trial court that the error had been
cured by withdrawal of the objectionable remarks and that the
verdict was not influenced thereby.

In *Greenfield* v. *Kennett*, 69 N. H. 419, counsel for the plaintiff
said he " should be willing to try this case before a jury composed
of parties with whom the defendant had dealt." *Perkins* v. *Burley,*
64 N. H. 524, presented a similar remark. Counsel said in argu-
ment to the jury that if they knew how the plaintiff and his brother
were regarded in the vicinity in which they lived he would be will-
ing to submit the case without argument.

In *Perkins* v. *Roberge*, 69 N. H. 171, counsel said in argument:
"This is a pretty serious matter when a man testifies to what is
not true in a matter of as great importance as this, and I don't

want him or his counsel either to say that he did not understand the question." This remark was considered reprehensible, but to afford no ground for setting aside the verdict which had been found in a trial by the court without a jury.

In *Shute* v. *Company*, 69 N. H. 210, the closing argument of the plaintiff's counsel, that the defendants "were so anxious for production that they took down remnants of the pulley while the girl lay bleeding upon the floor," contained no statement of fact which the evidence did not tend to prove, and was legitimate.

In *Pritchard* v. *Austin*, 69 N. H. 367, the objectionable remark of counsel having been withdrawn and an affirmative finding made by the presiding justice that the jury were not influenced thereby, the exception taken to the remark made was overruled.

In *Monroe* v. *Lumber Co.*, 68 N. H. 89, counsel stated to the jury that the statements made by a witness in a deposition which was in evidence were true and his testimony on the stand false. It was said: "Nobody can reasonably doubt the legitimacy of such an argument." As to another objection claimed in the same case, it was said: "There is no finding . . . that the alleged improper argument . . . was in fact made, nor is any exception allowed on this subject; consequently there is nothing which can now be considered."

In *Heald* v. *Railroad*, 68 N. H. 49, counsel said, in effect, that the defendants had tolerated a dangerous practice of lowering gates at the crossing "for all this time," meaning apparently for a long time, when there was evidence of such practice at the time of the accident only.

In *Robertson* v. *Madison*, 67 N. H. 205, counsel stated in argument that the testimony of a witness was different from what it was upon a former trial. There was no evidence as to his testimony upon a previous trial.

In *Jordan* v. *Wallace*, 67 N. H. 175, the defendant's counsel said of the plaintiff: "I don't believe that he ever lived an honest hour in his life, when he was not either plotting and planning to beat somebody individually, or to go into bankruptcy and beat everybody collectively."

In *Noble* v. *Portsmouth*, 67 N. H. 183, counsel said: "When people get $1,200 or $1,500 for a fracture, is $3,000 too much in this case?"

In *Bullard* v. *Railroad*, 64 N. H. 27, the defendants' counsel commented on the fact that one of the plaintiff's physicians had not been called to testify. The plaintiff's counsel said in reply that the physician had not been called because he had not examined the plaintiff.

In *Cross* v. *Grant*, 62 N. H. 675, counsel stated that there were

facts to which one of the plaintiff's witnesses did not testify because the witness' knowledge of them was not known to the plaintiff until after she had closed her case. He also stated what a certain witness would have testified if recalled, and attempted to repeat and comment upon evidence that had been excluded.

In *Hilliard* v. *Beattie*, 59 N. H. 462, counsel commented in his opening on the fact that there had been a change of venue and further referred to the subject in argument.

In *Tucker* v. *Henniker*, 41 N. H. 317, counsel referred to a case by name which had been tried before referees, and stated the amount of damages awarded.

In *State* v. *Foley*, 45 N. H. 466, the verdict was set aside because counsel was permitted to argue a matter upon which there was no competent evidence.

In *Pearson* v. *Beef Co.*, 69 N. H. 584, *Baldwin* v. *Railway*, 64 N. H. 596, and *Demars* v. *Glen Mfg. Co.*, 67 N. H. 404, the fact that the incompetent statements were in the form of questions to witnesses, which the witnesses were not permitted to answer, did not alter the rule, though in the latter case a finding that the verdict was not affected thereby sufficed to prevent a new trial.

In *Dow* v. *Electric Co.*, 68 N. H. 59, the remarks objected to related to the law of the case and not to the facts, and were not prejudicial.

In *Dow* v. *Weare*, 68 N. H. 345, the remarks objected to were supported by the evidence.

In *Furnald* v. *Burbank*, 67 N. H. 595, there was a finding that the remarks were not prejudicial. The report of the case does not show what was said.

In *Aldrich* v. *Railroad*, 67 N. H. 380, the appeal of counsel to the jury not to be "niggardly" in the assessment of damages, because they might sometimes appreciate niggardliness through personal experience, was not so inconsistent with legal fairness of trial as to require, as matter of law, that there should be a new trial. This was merely an appeal for a fair judgment. It is manifest a niggardly assessment would not be the fair assessment of damages to which the plaintiff was entitled.

In *Sabine* v. *Merrill*, 67 N. H. 226, counsel commented upon a paper not in evidence. The verdict against the claim made established that the remarks of counsel did not produce the effect intended, and that the opposite party was not prejudiced thereby.

In *Gault* v. *Railroad*, 63 N. H. 356, the allusion of counsel to the importance of the case to his client was said to be dangerous, and apt to be carried to an extent inconsistent with legal fairness of trial.

In *Felch* v. *Weare*, 66 N. H. 582, counsel said: "I cannot com-

ment on evidence that has been excluded." The remark was said
to belong to a dangerous class; but that as the jury did not know
to what it referred, it might be inferred that the remark had no
influence favorable to the party making it.

In *Harrington* v. *Wadsworth*, 63 N. H. 400, permitting counsel
to draw unwarranted inferences was said to be equivalent to a rul-
ing that the inference may legally be drawn and to be erroneous.

In *Mitchell* v. *Railroad*, 68 N. H. 96, 117, the question of fact
being whether the engineer rang the bell upon the locomotive
before starting, the plaintiff's counsel said that "out of the whole
population of Woodsville" the defendants were able to produce
but two witnesses to testify that the bell was rung. This was
not objectionable. "It was merely a forcible expression of the
presumption that the defendants called on the point all the wit-
nesses they could procure and of the conceded fact that of the
nine or ten persons shown to be within hearing, and of others
whom the jury might find on the evidence were within hearing,
two only were produced to testify that they heard the bell. . . .
A verdict is not to be set aside for the reason that counsel urged
the jury to draw from admitted or established facts an unwar-
ranted inference. Such an argument is merely an erroneous state-
ment of the law. Whether the inference can properly be drawn is
a question of law. Whether, if it lawfully may, it shall be drawn,
is for the jury. . . . It is the duty of the court to instruct the
jury upon the law, and of the jury to obey the instructions. In
the absence of evidence to the contrary, it is presumed that these
duties were performed. If in *Bullard* v. *Railroad*, 64 N. H. 27,
the plaintiff's counsel, instead of stating to the jury as a fact that
the physician had not examined the plaintiff and therefore was
not called as a witness, had asked the jury to infer from the fact
that he was not called, that he had not examined the plaintiff and
therefore could not testify to his condition, he would not have
transgressed the line of his duty."

It is the right of counsel in the closing argument to comment
upon the evidence received on the trial, to criticise the character,
conduct, appearance, motives, and testimony of the witnesses, so
far as they have appeared and are relevant to the issue. *Hilliard* v.
*Beattie*, 59 N. H. 462, 465. "The range of discussion is wide."
Within that range, the only limitation is the ability of counsel.
"His illustrations may be as various as the resources of his gen-
ius; his argumentation as full and profound as his learning can
make it; and he may, if he will, give play to his wit, or wings to
his imagination." *Tucker* v. *Henniker*, 41 N. H. 317, 323. But
the limits in discussion are "the facts in the case and the conclu-
sions legitimately deducible from the law applicable to them."
*Jordan* v. *Wallace*, 67 N. H. 175, 178.

If counsel errs in his view of the law applicable to the facts, and urges the drawing of unwarranted inferences therefrom, so long as he makes no statement of fact outside the evidence a verdict in his favor will not be disturbed unless the court expressly or tacitly confirms his erroneous view of the law. *Mitchell* v. *Railroad,* 68 N. H. 96, 117; *Harrington* v. *Wadsworth,* 63 N. H. 400. But the statement to the jury by counsel of facts which are incompetent as evidence is error, whenever during the trial the statement is made. It is error whether made in the opening, in the argument, in the interrogation of witnesses, or in the course of altercations between counsel. The statement in argument of material matters which are not in proof, or an attack upon the opposite party based upon other than the facts in the case and the conclusions legitimately deducible from the law applicable thereto, are equally erroneous. If it does not appear that the verdict cannot have been influenced thereby (*Sabine* v. *Merrill,* 67 N. H. 226), such error is fatal, unless upon objection the party in fault immediately withdraws the objectionable statement, asks the jury not to consider it, obtains an instruction to the jury from the court to that effect, and a finding from the presiding justice that the error was cured and did not affect the result. *Pearson* v. *Beef Co.,* 69 N. H. 584; *Perkins* v. *Roberge,* 69 N. H. 171; *Shute* v. *Company,* 69 N. H. 367; *Greenfield* v. *Kennett,* 69 N. H. 419; *Heald* v. *Railroad,* 68 N. H. 49; *Dow* v. *Electric Co.,* 68 N. H. 59; *Monroe* v. *Lumber Co.,* 68 N. H. 89; *Mitchell* v. *Railroad,* 68 N. H. 96; *Dow* v. *Weare,* 68 N. H. 345; *Jordan* v. *Wallace,* 67 N. H. 175; *Noble* v. *Portsmouth,* 67 N. H. 183; *Sabine* v. *Merrill,* 67 N. H. 226; *Aldrich* v. *Railroad,* 67 N. H. 380; *Demars* v. *Glen Mfg. Co.,* 67 N. H. 404; *Felch* v. *Weare,* 66 N. H. 582; *Bullard* v. *Railroad,* 64 N. H. 27; *Perkins* v. *Burley,* 64 N. H. 524; *Baldwin* v. *Railway,* 64 N. H. 596; *Harrington* v. *Wadsworth,* 63 N. H. 400; *Gault* v. *Railroad,* 63 N. H. 356; *Cross* v. *Grant,* 62 N. H. 675; *Hilliard* v. *Beattie,* 59 N. H. 462; *State* v. *Foley,* 45 N. H. 466; *Tucker* v. *Henniker,* 41 N. H. 317.

The argument of the plaintiff's counsel to which objection was first taken was within the limits of legitimate advocacy. Counsel said: "There is not a witness except one who has testified here, and who is in the employ of the railroad, whose testimony is not utterly false." The witnesses on the two sides of the controversy were in conflict. One inference by which such conflict is explainable is that the witnesses on one side or the other have been untruthful. Counsel have the right to claim that the false testimony came from his opponents. *Monroe* v. *Lumber Co.,* 68 N. H. 89, 92. This was the substance of the statement.

The plaintiff's counsel also said: "Actions tell you, Mr. Foreman, something. I cannot conceive — I do not believe you or any man on that panel can conceive — of such a story as they bring in here to rob my client of his rights. I don't believe that any one of you can conceive of the Concord & Montreal Railroad keeping a man in their employ who would hurl his train in that way into danger, and imperil the property of the road and the lives of its passengers. I tell you that a corporation that would do that ought to be indicted, and the man who had charge of this engineer and kept him day after day in the employment of this company, endangering your lives and mine, ought to have been punished. Hadn't he? What! keep a man who had been so reckless and who had done this awful thing they tell you about; keep him in their employ; keep him day after day; keep him until the present moment; keep him in his bed when he should have been here and testified!" To this remark exception was duly taken. What is now said tending to sustain the exception is the view of the chief justice and myself. In this view a majority of the court do not concur.

As before stated, the defendants' case before the jury was founded upon the proposition that the accident was not caused by any defect in the track, but by the negligence of the engineer in running upon the cross-over, contrary to the rules of his employers, at a high speed — at a speed almost certain to produce derailment. It appeared that the engineer was retained in the defendants' employ, despite the fact of his guilt of criminal recklessness and disobedience of orders, if the claim made at the trial was true. We see nothing objectionable in the comments of counsel upon these facts, as bearing upon the probability whether the claim now made as to the cause of the accident was correct. The facts were legitimately in the case, and counsel had the right to make use of them. Counsel did not say the engineer or the defendants had been guilty of an indictable offence, or claim that they had been if such claim would have been objectionable. His argument was that they had not been guilty of such recklessness or want of care.

The defendants introduced the testimony of a physician to the effect that the engineer was ill at his residence in Manchester and unable to attend court. Upon cross-examination the physician testified that the engineer was able to give a deposition. The plaintiff's counsel then, in the hearing of the jury, offered to take the deposition. The defendants' counsel declined, saying that they did not care to take it, but that the plaintiff's counsel could do so if they chose. Comment upon the fact that the engineer's testimony was not produced was also legitimate. What inference should be drawn from the fact was for the jury. *Carter* v. *Beals*,

44 N. H. 408, 413. But counsel went further and informed the jury that the defendants kept the engineer in bed when he should have been in court to testify, meaning that the defendants caused or required the engineer to affect illness to prevent his testimony being given at the trial. As counsel for the plaintiff admit in their brief, "the thought was the defendants had kept the witness from court." This fact, if proved, would have been competent. *Janvrin* v. *Scammon*, 29 N. H. 280. Of this fact there was no evidence. The evidence was that the engineer was sick and unable to attend the trial, but could give a deposition. The result of the colloquy between counsel, in the presence of the jury, was that it appeared that neither side desired his evidence in the form of a deposition. Ordinarily no inference can be drawn because a witness equally at the command of each party is not called. If a special inference should be drawn against the defendants because the engineer was still in the railroad employ, the plaintiff was entitled to the benefit of it, and to argue it, and also to any inference that could be drawn from the fact that the defendants, instead of asking for leave to take a deposition in the first instance, introduced the testimony of the physician. As the case stood, neither side being willing to take the engineer's deposition, it might have been inferred that the engineer, not possessing the general habit of untruthfulness assigned by the plaintiff's counsel to all railroad witnesses in the case save one, was disposed to tell the truth, and therefore the defendants did not call him. There was no force to the inference against the defendants for not producing his testimony except it was believed he was an honest man and would tell the truth. The jury, as the case stood, might have thought if the plaintiff's counsel so believed there was no reason why the plaintiff should not have taken his deposition, and answered the whole fabric of the defendants' case by the statement of the one truthful railroad man. To meet this inference, or some other apparent to him, the plaintiff's counsel went out of the case and made a statement and charge, in support of which there was no competent evidence. It is argued that what counsel said was not a statement of a fact, but a request to the jury to draw an inference from the attempt of the defendants to explain by the evidence of the physician their failure to call the engineer. *Mitchell* v. *Railroad*, 68 N. H. 96. But the jury were not asked to infer from the evidence an attempt to deceive, and from such inference to infer guilt of the suppression of evidence, nor could they lawfully have been asked to make such inference. If the ingenious argument now made in the brief had been attempted before the jury, it could not properly have been permitted. It contains a charge prejudicial to the defendants of which there was no evidence and which was not legitimately deducible

from the facts proved. The case would have been one with *Jordan* v. *Wallace*, 67 N. H. 175. But no such argument was made. The present case more nearly resembles *Heald* v. *Railroad*, 68 N. H. 49, 50, than any other that has been cited. In that case, the statement was that the defendants had tolerated a dangerous practice of lowering the gates at the crossing "for all this time," meaning apparently for a long time. It was said: "The jury were told, not merely that this dangerous act occurred at the time of the accident, of which there was competent evidence, but that such acts were of frequent occurrence, . . . of which there was no competent evidence." In the case before us, the jury were not told the defendants had attempted to deceive as to their reason for not furnishing the testimony of the engineer, of which there was competent evidence, but that the defendants had kept the witness from court, of which there was no competent evidence. In the language used in *Heald* v. *Railroad*, the statement was "testimony upon a material point, the natural effect of which was prejudicial to the defendants." In the absence of a finding that it did not have that effect, I think (and in this view the chief justice concurs) that the rule as laid down and applied by the court in the cases cited, if adhered to, compels the conclusion that the trial was not a fair one, and that the error can be corrected only by a new trial. We do not think the rule should be departed from in theory or practice. A majority of the court, however, are of opinion that the remarks excepted to were not such a departure from legitimate advocacy as to require that the verdict should be set aside. The exception is therefore overruled.

An exception was claimed, based upon an objection to the argument of counsel stated to the stenographer, but not made known to the court or opposing counsel when made. For this reason the court refused to allow the exception, to which' refusal the defendants excepted. It does not appear when the objection was made known to the court and the exception claimed, but it is assumed this was done at the conclusion of the plaintiff's argument, the earliest time at which the claim could have been made, if not made at the time of the utterance objected to. The foundation of the rule requiring counsel to confine their argument to the facts in proof is to prevent the determination of the issue upon unsworn statements, incompetent as evidence for that reason if for no other. Hence, objection to incompetent evidence of counsel in argument should be taken as to other incompetent evidence —when it is offered. "Ordinarily, objections to evidence, unless made when it is first introduced and its bearing understood, will be considered to have been waived. *Bassett* v. *Company*, 28 N. H. 438, 452; *Taylor* v. *Railway*, 48 N. H. 304, 309. The judge may entertain an ob-

jection to evidence made at any stage of the trial, and exclude it from consideration by the jury if justice requires it (*Judge of Probate* v. *Stone*, 44 N. H. 593, 607); but he is not bound to entertain the objection when made out of season, and a refusal to do so is not error." *Gardner* v. *Kimball*, 58 N. H. 202. The error of a defective or erroneous statement of the evidence by the judge in his charge affects the fairness of the trial in the same way as like statements by counsel in argument. No exception can be taken to such error in the charge of the court unless his attention is called to it at the time. *Cutler* v. *Welsh*, 43 N. H. 497, 499. The error in either case is not in all cases incurable. An immediate correction of the error may save the trial. At no time can such correction be made with greater probability of removing the wrongful effect than at the time of utterance. For counsel, conscious of the error, to be permitted to sit by without making objection until there is less probability the wrong can be cured, would be to turn a rule of justice and fairness into a mere trap. *Lisbon* v. *Bath*, 23 N. H. 1, 9; *Lyman* v. *Littleton*, 50 N. H. 42, 45. The universal practice appears to have been to object upon the instant. In *Felch* v. *Weare*, 66 N. H. 582, it was held that if the party objecting for such cause gives the court to understand that he is satisfied with the amende made at the time by the party in fault, he waives his exception. If this be so, the failure to object at the time is clearly a waiver of the right to object. The refusal of the presiding justice to allow an exception to which the party objecting is not entitled as matter of law presents no question for our consideration. *Monroe* v. *Lumber Co.*, 68 N. H. 89, 92.

It is not necessary to give reasons for the proposition that an objection is not taken until it is made known to the presiding justice and an exception claimed of him.

The result is that the exceptions are overruled. From this result the chief justice and myself dissent for the reasons stated.

*Exceptions overruled.*

PEASLEE, J., did not sit: the others concurred.

The defendants moved for a rehearing upon the following grounds:

(1) That the Concord & Montreal Railroad did not, and in law could not, delegate a duty of repairing the track to the Boston & Maine Railroad.

(2) That the plaintiff, as between himself and the other defendants, assumed the risk of the negligence of the Boston & Maine Railroad and their servants.

(3)   That there was no evidence of negligence in the Boston & Maine Railroad or their employees.

(4)   Because of the statements of the plaintiff's counsel in argument.

*Samuel W. Emery* and *Burnham, Brown & Warren*, for the plaintiff.

*Oliver E. Branch* and *William H. Sawyer*, for the defendants.

I.   The right of the Concord & Montreal to use the track being a license, the Concord & Montreal was a mere licensee, and not a principal of the Boston & Maine. *Coney Island etc. R. R.* v. *Cable Co.*, 53 Hun. 169; *Richmond etc. R. R.* v. *Railroad*, 104 N. C. 658.   If the relationship of principal and agent between the Concord & Montreal and the Boston & Maine can be created by implication, for the sake of the plaintiff's remedy, very startling results would follow.

As between the two roads, the rights of the Concord & Montreal were no greater than those of an individual who acquires permission to use a way across another's land.   They had no greater rights of possession or control, or of making repairs, or dictating what repairs should be made, than would an individual using a way across another's land.   *Murch* v. *Railroad*, 29 N. H. 9, 33. But would it be argued or held that the acceptance of such a license or right created an agency in the grantor by the grantee to make necessary repairs, so that the licensee or grantee would be liable to his own servant for the failure of the grantor (otherwise denominated the agent) to do something which the grantee (otherwise known as the principal) could not compel the grantor or agent to do, or control him in doing, either in fact or in law?   Did the Concord & Montreal have the power as owners, or in their own right, to repair the tracks?   Clearly not.   They did not own them. They did not lease them.   They had no contract with the Boston & Maine under which they were authorized to repair, nor a joint or several control over them.

It is apparent from the ownership of the tracks by the Boston & Maine that the right of repairing them was appurtenant to that ownership.   Before the arrangement was made by which the Concord & Montreal obtained license to use them they had that right; and that they exercised it to the exclusion of the Concord & Montreal is a fact which the case finds, and which was fully known and understood by the plaintiff.   Possibly, if the Boston & Maine had desired to do so, and the Concord & Montreal had been willing, the Boston & Maine could have transferred to the Concord

& Montreal the work of repairing the tracks; or they could have entered into an arrangement by which the work of repairing them should be conducted by them jointly, under joint control, and at their joint expense. But how could the Concord & Montreal delegate to the Boston & Maine, or turn over to them, the right to repair a track which they themselves never had the right to repair? And how delegate to the Boston & Maine the duty of repairing the track as agent or vice-principal, when it was absolutely impossible for them to discharge that duty, in respect to that particular piece of track, in the first instance? And how could they be held liable to the plaintiff for a failure to discharge that which it was impossible for them to discharge, and which the plaintiff knew they were not attempting to discharge, and which was assumed, as he well knew, solely and entirely by the Boston & Maine? There can be no duty imposed on one by operation of law when he has no right to discharge it, and is incapacitated to discharge it. The right and the duty are correlative, and this rule is not modified or qualified, except in a narrow line of cases where the circumstances are such as to create an estoppel.

We are, therefore, led by the reasoning of the court to the conclusion that the Boston & Maine Railroad, an independent corporation, owning the land and tracks at Portsmouth, having them in exclusive control, and exclusively controlling and repairing them, as was known to the plaintiff, became by force of legal implication the vice-principal of the Concord & Montreal in respect to furnishing the employees of the Concord & Montreal "safe and suitable appliances" at Portsmouth for their use. But the relation of principal and agent, or principal and vice-principal, imports fundamentally the primary-dominant right of the principal over the *res*, and his power and authority to direct the movements and control the conduct of his vice-principal or agent, and to discharge him from his service for failure or neglect to do so. Will it be contended for one moment that the Concord & Montreal had any such power or authority over the *res*, or the Boston & Maine Railroad? And if not, the whole theory of the vice-principalship or agency must fall.

II. The legal liability of the master to furnish his servants a reasonably safe place and reasonably safe appliances, in which and with which to do his work, does not necessarily subject him to damages for a failure to do so, since his failure to do so is one which the servant may be aware of, and thereby make it one of the assumed risks of his employment. Here the plaintiff knew that the Concord & Montreal had no ownership in or control of the tracks, and in fact made no repairs upon them. In short, that they did not undertake to keep them in either a safe or an unsafe con-

dition, but that whatever condition they were in at any and all times was the work of the Boston & Maine's servants. This being the situation, he assumed the risks of whatever was involved in that obvious, continuing situation and condition of affairs. *Murch* v. *R. R.*, 29 N. H. 9, 34. In other words, he assumed the risk that the Concord & Montreal, his employers, would not repair the tracks and that the Boston & Maine would, notwithstanding that in the absence of such knowledge he might rightfully have assumed and relied upon the fact that this duty would be discharged by his employers. Knowing that his employers did not attempt to discharge it, he assumed the risk of the Concord & Montreal not repairing the tracks, and thereby made the Boston & Maine solely responsible for his safety; and the Boston & Maine became responsible for his safety, not because of any relationship of master and servant between him and them, nor of agency between them and the Concord & Montreal, but because the law imposed upon the Boston & Maine the duty of caring for him in a reasonable manner, upon the grounds of public safety. His contract in legal effect was, that on the tracks of the Concord & Montreal he would look to the Concord & Montreal for his safety; but on the tracks of the Boston & Maine, which he knew to be their tracks, and which he knew his employers did not control or repair, he would look to the Boston & Maine for his safety. The negligence of the servants of the Boston & Maine was a special hazard which he assumed, since it was beyond the power of the Concord & Montreal to control or direct them in any particular, which he knew.

III. The verdict should be set aside on account of the misconduct and unjustifiable remarks of counsel. It is not necessary here to repeat the rules which are so well settled in New Hampshire, governing the legitimate scope of legitimate argument of counsel in the trial of causes. "Comments based upon other than the facts in the case, and the conclusions legitimately deducible from the law applicable to them, are no part of the privilege of counsel." *Jordan* v. *Wallace*, 67 N. H. 178. If they are made and objected to, the party in fault "is bound, after a verdict in his favor, to obtain a finding that the result was not affected by his. tort and ought not to be annulled on account of it." *Bullard* v. *Railroad*, 64 N. H. 27–33; *Roberts* v. *Madison*, 67 N. H. 205; *Furnald* v. *Burbank*, 67 N. H. 595; *Heald* v. *Railroad*, 68 N. H. 49.

Whether or not the engineer did something which constituted an indictable offence, was not in this case. It was not for the jury to consider. A suggestion that he was guilty of an indictable offence could not but create a prejudice against him and the defendants. It was entirely aside from any legitimate issue. So,

too, the remarks following, in regard to keeping him in the employ of the road, were foreign to the case. The fact that he was kept in the employ of the road was immaterial. Certainly no legitimate inferences could be drawn from it, one way or another, which were material or relevant to the subject-matter of the controversy. It was suggested for no other purpose than to arouse still further the vindictive sentiments of the jury.

The next statement, made in the same connection, that the engineer had been "kept in his bed, when he should have been here to testify," was not a fact in evidence, nor an admitted fact, nor a legitimate inference to be drawn from the evidence appertaining to this particular subject-matter. The undisputed evidence was that the engineer was sick and unable to attend court, but not so sick that his deposition could not be taken. Moreover, the offer of the defendants to permit the plaintiff to take his testimony without the customary notice, if he desired it, not only absolutely rebutted the inference which counsel might have drawn and argued from, that the defendants were unwilling to have the engineer testify, but made the positive assertion of counsel, that the engineer had been "kept in bed," if possible more unwarranted, audacious, and outrageous than it would have been had not this offer been made.

We submit that the language used in this case was more unjustifiable, more unwarranted, and more flagrant than that condemned by the court in *Heald* v. *Railroad*, and cannot be differentiated from it upon principle. It was an assertion on the part of counsel that the engineer was feigning sickness through the connivance and by the procurement of the defendants. If there had been evidence that he was not sick, but was in bed, then such an inference would have been legitimate. But with no evidence of that kind, and with the reason of his absence *bona fide* shown, the statement of counsel was wholly unwarranted, and was evidently made for no other purpose than to feed the prejudices of the jury, and to induce them to increase the damages, as a punishment to the defendants. We further submit that the declination of the presiding judge to find that the objectionable language did not probably influence the minds of the jury, is of itself sufficient, if the court proposes to follow the precedents which it has in recent years furnished, to vitiate the verdict and make necessary a new trial. The court has adopted a most wholesome, if very stringent rule, in respect to the privileges and latitude allowed to counsel in remarks to the jury. It is a simple rule, and as just as simple. No practitioner need be embarrassed by it, if he means to be fair; and if he means to be unfair, or is unfair, the application of the rule ought to be as certain and impartial as any which obtain in matters of evidence or pleading.

The verdict should be set aside because of other improper remarks of counsel. It is true that the exception to them was disallowed for the reason that it was not made to the court or opposing counsel when claimed. We submit that a rule should be established, if it has not been already, which permits the appellate court, whether objection is made or not, to take primary and original cognizance of improper and unprofessional procedure in the trial of causes. To require counsel to constantly and audibly interrupt the progress of an argument, by objections formally noted, is to require him to do that which in itself is calculated to prejudice a jury against him and his cause. An attorney who travels outside the evidence or the legitimate inferences that may be drawn from it, infringes *per se* his privilege. Usually, if not always, he is as conscious of it as opposing counsel. It is especially flagrant in a closing argument, when no chance is afforded for reply or exceptions. The mischief is quite as likely to be intensified by audible objection as otherwise, and there is no reason or justice in a rule of practice which prevents a review of such conduct, unless it is presented under formal objection and exception.

PIKE, J.   The exception to the denial of the defendants' motion for a nonsuit raises the questions, first, whether there was evidence from which the jury could properly find that the defendants were negligent, and, second, whether the plaintiff's knowledge that the track was owned, managed, controlled, and cared for by the Boston & Maine Railroad constituted a defence.

The law imposes upon the master the duty to use ordinary care to protect his servants from injury while they are engaged in the performance of their work. He must use ordinary care to provide them with a suitable place in which to work, and notify them of dangers of which he is aware or ought to be aware, but of which his servants by the exercise of like care are unable to inform themselves. *Mitchell* v. *Railroad*, 68 N. H. 96, 116; *Collins* v. *Car Co.*, 68 N. H. 196, 198. It is immaterial whether the master owns the premises where his servants are employed, or simply has permission to use them for the purposes of his business. In either event the premises are the place he provides for them in which to work.

The defendants, through an arrangement with the Boston & Maine Railroad, had provided the plaintiff with the track where the accident occurred as the place in which he was required to work. They were therefore bound to use ordinary care to keep it in suitable repair, and to learn of and inform him of dangers which he, by the exercise of like care, was unable to inform himself.

From the testimony of the plaintiff's witnesses that the rails

were displaced and that there were rotten ties under them, the jury might reasonably find that the track was unsuitable for the work required of the plaintiff upon it; and that by ordinary care the defendants would have learned of its condition, and should have induced the Boston & Maine Railroad to repair it, ceased to make use of it if not repaired, or notified the plaintiff of the danger of the situation.

It appeared that the repairs upon the track were made by the Boston & Maine Railroad. The plaintiff knew this fact, and also that this corporation owned the track and had the exclusive management and control thereof. Because of this knowledge, the defendants say that the plaintiff assumed the risk of injury from the track. A servant assumes the risk of injury from dangers incident to his employment, including the danger that follows the master's failure to perform his duty, only when he knows or by ordinary care ought to know of their existence. *Henderson* v. *Williams*, 66 N. H. 405; *Casey* v. *Railway*, 68 N. H. 162; *Hardy* v. *Railroad*, 68 N. H. 523, 536; *Burnham* v. *Railroad*, 68 N. H. 567, 568. Although the plaintiff knew that the track was owned, managed, and controlled by the Boston & Maine Railroad, it did not appear that he knew that the defendants would not be able to induce the owners to make all necessary repairs upon it; that, failing in this, they would not cease to make use of the track; or that they would not notify him of the situation so that he might be in a position to protect himself. It therefore cannot be held as a matter of law that he assumed the risk of danger that resulted in his injury. The motion for a nonsuit was properly denied.

The rule in relation to incompetent statements in a counsel's argument is much like the rule in respect to the admission of irrelevant testimony. A trial is not fair in a legal sense when the verdict is procured by incompetent evidence. Nor is it fair when statements respecting matters not in evidence, but material to some issue, or matters irrelevant to every issue and calculated to prejudice the adverse party, are made by counsel, and it is not found that they did not influence the jury. *Bullard* v. *Railroad*, 64 N. H. 27. So long as counsel confine their comments to the evidence and the matter in issue, it is their privilege " to arraign the conduct of parties; impugn, . excuse, justify, or condemn motives, so far as they are developed in evidence; assail the credibility of witnesses when it is impeached by direct evidence, or by the inconsistency or incoherence, of their testimony, their manner of testifying, their appearance on the stand, or by circumstances "; and in so doing, " the largest and most liberal freedom of speech is allowed, and the law protects them in it." *Tucker* v. *Henniker*, 41 N. H. 317, 323. The decided cases in this state in

which verdicts have been set aside on account of the conduct of counsel come within the rule which excludes incompetent matters, both in evidence and in argument. In no case has a verdict been set aside when the remarks of counsel were founded on evidence which related to a material issue, no matter what the form of the statement, how forcibly it was put, or how much it tended to prejudice the jury in favor of his client. *Mitchell* v. *Railroad*, 68 N. H. 96, 117; *Dow* v. *Weare*, 68 N. H. 345; *Shute* v. *Company*, 69 N. H. 210, 212. The cases in which verdicts have been set aside on this account, either in opening the case to the jury, in the examination of witnesses, or in the closing argument, may be divided into three classes. First, where counsel have stated facts material to some issue in the case which were not or could not be put in evidence. *Tucker* v. *Henniker*, 41 N. H. 317, 322; *Cross* v. *Grant*, 62 N. H. 675, 686; *Bullard* v. *Railroad*, 64 N. H. 27; *Perkins* v. *Burley*, 64 N. H. 524; *Baldwin* v. *Railway*, 64 N. H. 596; *Jordan* v. *Wallace*, 67 N. H. 175; *Robertson* v. *Madison*, 67 N. H. 205; *Heald* v. *Railroad*, 68 N. H. 49; *Greenfield* v. *Kennett*, 69 N. H. 419; *Concord etc. Co.* v. *Clough, post.* Second, where counsel have stated facts which were not only irrelevant to every issue in the case, but also calculated to prejudice the jury. *Hilliard* v. *Beattie*, 59 N. H. 462; *Baldwin* v. *Railway*, 64 N. H. 596; *Noble* v. *Portsmouth*, 67 N. H. 183; *Pearson* v. *Beef Co.*, 69 N. H. 584. Third, where counsel have been permitted to urge the jury to draw from evidence properly in the case for one purpose conclusions which it had no tendency to prove. *State* v. *Foley*, 45 N. H. 466; *Harrington* v. *Wadesworth*, 63 N. H. 400.

If, therefore, there was evidence on which the plaintiff's counsel could have properly based his remarks, — "What! keep a man who had been so reckless and who had done this awful thing they tell you about; keep him in their employ; keep him day after day; keep him until the present moment; keep him in his bed when he should have been here and testified!"— and they were relevant to any of the issues he was discussing, they were legitimate.

According to the defendants' theory, the accident was caused by the carelessness of their engineer in running his train too fast over the track in question. It appears that he was continued in their employment in the same capacity after the accident until they leased their road to the Boston & Maine Railroad, and that he has been employed in a like capacity by this railroad ever since. The defendants produced a physician, who testified that the engineer was ill at his home in Manchester and unable to attend court. Upon cross-examination he testified that the engineer was able to give his deposition. The plaintiff's counsel, within the hearing of the jury, offered to suspend the trial and take his depo-

sition; but the defendants' counsel declined, saying that they did not care to take it, but that the plaintiff could take it if he chose. The defendants' purpose in offering evidence of the illness of the engineer must have been to give the jury to understand that, but for this illness, they should have produced him to testify as to the speed the train was going. The object was to avoid the unfavorable inference that the jury might draw from the engineer's unexplained absence. *Bullard* v. *Railroad*, 64 N. H. 27, 31. If there was no reason to question their motives when the physician's evidence was offered, there was reason to question them when they refused the offer of the plaintiff's counsel to suspend the trial and take the deposition of the engineer. The position in which the defendants stood was, that they had asked the jury to believe that they were anxious to have the testimony of the engineer, but were finally forced to admit that they did not want it. The jury must have seen that the ostensible motive of the defendants in offering evidence of the engineer's illness was not the real one, and might fairly conclude that the physician's testimony was not true. The plaintiff's statement that the defendants kept the engineer in bed was only a forceful way of asking the jury to find that they did not want to use him because they knew his testimony would be hurtful to their case. The statement was legitimate argument upon the evidence in the case.

*Motion for rehearing denied.*

PEASLEE, J., did not sit: BLODGETT, C. J., and PARSONS, J., dissented from the conclusion that the argument of counsel was legitimate, but concurred upon the other questions: the others concurred.